## Baskett, By, &c. v. R. H. Crossfield and Transylvania University.

(Decided December 17, 1920.)

### Appeal from Henderson Circuit Court.

1. Libel and Slander—Matters of Defense—Privilege.—A letter containing matter of a defamatory nature, written by the president of a school to the parent of a pupil in the school informing the parent why the student had been dismissed from the institution and relating the facts and circumstances under which he was dismissed, is a privileged communication, and neither the school nor the president of the institution is liable to the pupil in damages for libel, if the letter was written in good faith with the proper motive and based upon reasonable or probable cause.

2. Libel and Slander—Privilege—Malice—Presumption.—A qualifiedly privileged communication is one where the circumstances are such as to preclude any presumption of malice, but if it affirmatively appear that the communicator was guilty of either falsehood or malice he is liable in damages.

HENSON & TAYLOR and VANCE & HEILBRONNER for appellants.

YEAMAN & YEAMAN and JOHN C. WORSHAM for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Transylvania University is a co-educational institution regularly incorporated, with a board of trustees, located at Lexington, Kentucky, and R. H. Crossfield is and has been for several years its president. Appellant, Oscar R. Baskett, matriculated as a student in the university in September, 1918, and with another young man from Henderson was assigned to a room on the second floor of a boys' dormitory on the campus, facing one of the principal thoroughfares of the city of Lexington. One or more windows of the room looked out upon the street. About two weeks after the arrival of young Baskett at the university complaint was made to President Crossfield that he (Baskett) had and was then indecently exposing his person at the open window of his room in such way as persons traveling the street saw his nude form and were embarrassed thereby. Some of the college faculty immediately set about to investigate the charge and on entering Baskett's room found him in an absolutely nude condition with the window shades partly up. Baskett

was directed to report at the office of President Cross-field, which he did within a short time thereafter, and an investigation was had resulting in President Crossfield suggesting to young Baskett that he immediately withdraw from the school and leave on the afternoon train for his home in Henderson. Baskett called up his mother over the telephone and told her that he was leaving the shool because some women had reported that he had been exposing his person; thereupon his mother called up a member of the faculty of the university to inquire the reason of the exclusion of her son. That day President Crossfield wrote the father of Baskett a letter. It was dated October 1st. A further investigation being later made Crossfield again wrote the father another letter dated October 4th, and these two letters are the basis of an action against the university and President Crossfield to recover damages for libel. They read as follows:

"Translyvania College,
Lexington, Ky.

Office of the President,
October 1, 1918.

Dear Mr. Baskett:

I am greatly grieved to be put to the necessity of asking your son to withdraw from our campus. It is always a source of great distress to us to have a case of any sort of discipline. The object of the institution is to train men rather than discipline them, but sometimes situations arise that make it impossible for a student to remain upon the campus.

The report came to me yesterday morning that your son had been observed by a number of people indecently exposing himself from the window of his room. I think there can be no sort of question as to the act. I was perfectly sure of my ground before I called the boy into my office. He denied the act very strongly. However, in order to save mortification to him, and possibly arrest, for feeling was running pretty high against him, both on the part of students and others, I told him he should withdraw at once. Our treasurer refunded him the money that he paid with the exception of the proportionate amount for the two weeks. I instructed him to see Mrs. Perkins, and to have her refund the board money he had not used.

Assuring you of the deep humiliation that it causes me to be compelled to write you in this fashion, and hoping the boy may take this as a serious lesson for all of his life, and develop into useful manhood, I am,

Sincerely yours,

R. H. Crossfield.

Mr. Thomas Baskett,
724 Center Street,
Henderson, Ky.''

"Transylvania College,

Lexington, Ky.

Office of the President,

October 4, 1918.

Dear Mr. Baskett:

Mr. Hall, of your community, came to see me night before last, and he and I talked over the situation, with respect to your son, at length. I told him just how we felt about the whole matter; that it was a source of the greatest measure of pain and sorrow to us to be compelled to advise a young man to return to his home, and that we undertook to act in the place of a parent to all those who come to us for instruction. I told Mr. Hall that I would come home, further investigate the case, and report the results. I said to him that the evidence that your son was guilty of most serious misconduct was overwhelming, and that the charge that he had exposed himself from his room window was positive and thoroughly confirmed. I told him that one of the professors of the college, who was in charge of the dormitory, and the inspector of the dormitory went to the room of your son, and found him lying upon the bed in an entirely nude condition, the curtains being sufficiently raised to allow him to be seen from the street. I said, furthermore, that women, not members of the college community, who claimed that they had seen your son in a nude condition on Sunday and Monday morning, were so indignant that it was not really wise for your boy to remain on the campus, and that my advice to him to go home was as much an act of kindness to him as a matter of discipline.

I have returned from Richmond, and have gone into the case again. I am very sorry to state that a second investigation seems to make the case against your boy more damaging than the first investigation. Under no circumstances would he be permitted to live in the dormitory, and Professor Kuykendall would not in any way ad-

vise that he be permitted to board out in town. Every one of us feels that it would not be wise for the boy to return, and that his denying the statement attested by so many witnesses makes him an utterly impossible student for our student body.

I told Mr. Hall that had the boy manifested any sense of shame and mortification and penitence there would have been no question about his having a second chance, but that coupled with the offense was his utter disclaimer, and that the kind thing to do under the circumstances was not to make it a matter of faculty action, nor to allow the police to take hold of it, but to advise the young man in the strongest terms to withdraw immediately from the campus and from the city.

I am exceedingly sorry, both on the young man's account and that of his mother. We were in no wise responsible for the occurrence, and feel that the least severe discipline possible has been administered. Had this been brought before the faculty, his expulsion would have been practically certain. Had it gotten to the officers of the law, his arrest would have been certain.

I regret more than I can tell you to be put under the necessity of writing you the above statement, but after going into the matter this morning I find that the evidence is even more damaging than the statements as they came to me last Monday.

It is my sincerest hope that the young man will learn the lesson that he may develop into a useful and successful man of the highest type. We shall want to help him whenever possible.

Cordially yours,
R. H. Crossfield.

Mr. Thos. Baskett,
724 Center Street,
Henderson, Ky.''

The answer contained a plea averring (1) the truth of the statements contained in the two letters; (2) a statement of facts showing the communications privileged. On a trial the jury returned a verdict for the university and found for the plaintiff, Baskett, the sum of $100 against the defendant and appellee, Crossfield. The case was tried in the Henderson circuit court, and the appeal by Baskett is from that court. Crossfield prosecutes a cross-appeal.

Without reviewing the evidence at great length it will be sufficient to say that there was such conflict in it as would have warranted the trial court in submitting the case to the jury on the question of whether the young man did or did not indecently expose his person from a window of his room.   But we have, for reasons hereinafter pointed out, reached the conclusion that the judgment must be affirmed.

The gist of an action for libel is the   injury  to  the character.   Foster-Milburn Co. v. Chinn, 134 Ky. 424.

A writing is libelous if it subjects the person referred to to odium or ridicule or tends to subject him to obliquy. Kentucky Journal Pub. Co. v. Brock, 140 Ky. 373.

To render words actionable, unless special damages are shown, they must import that the person of whom they are spoken is guilty of a felony, or some   crime  of such turpitude as to render him liable on an indictment. Tharp v. Nolan, 119 Ky. 870.

In an action for libel the truth is always a complete defense, although the publication may  be  inspired  by malice or an ill-will and be libelous *per se*.   Herald Publishing Company v. Feltner, 158 Ky. 35.

If a communication come within the class denominated absolutely privileged or qualifiedly privileged, no recovery can be had.   Privileged communications are divided and defined as follows:

"(1) That the communication was made  by  the  defendant in good faith, without malice, not voluntarily, but in answer to an inquiry, and in the reasonable protection of his own interest or performance of a duty to society; (2) that the defendant must honestly believe  the  communication to be true; (3) there must have been reasonable or probable grounds known to him for the suspicion; (4) that the communication, if made in answer to an inquiry, must not go further than to truly state the facts upon which the suspicion was grounded, and to satisfy the inquirer that there were reasons for the suspicion." Under that definition, not only must the communication be made in good faith, without malice, upon reasonable grounds and in answer to an inquiry,  but  in  addition thereto it must be made by the defendant either  in  the protection of his own interest or the performance  of  a duty to society.   Felty v. Felty, 164 Ky. 335.

A privileged communication has been defined as one made upon a proper occasion, from a proper motive, in a proper manner, and based upon reasonable or probable cause. In such cases there is no *prima facie* presumption of malice from the publication. There must be some evidence beyond the mere fact of publication. Browning v. Commonwealth, 116 Ky. 286.

A qualifiedly privileged communication takes place when the circumstances are held to preclude any presumptions of malice but still leave the party responsible for both falsehood and malice if affirmatively shown.

Where a party makes a communication and such a communication is prompted by a duty owed either to the public or to a third party, or the communication is one in which the party has an interest and is made to another having a corresponding interest, the communication is privileged if made in good faith and without actual malice. 25 Cyc. 385; Sullivan v. Strahorn-Button-Evans Commission Co. (Mo.), 47 L. R. A. 859; Nix v. Caldwell, 81 Ky. 293; Baker v. Clark, 186 Ky. 816.

The sole inquiry necessary for us to consider on this appeal is were the two letters of which complaint is made privileged or qualifiedly privileged communications? If they were, no action for libel is maintainable by Baskett; if they were not, or if the letters were only qualifiedly privileged and there was actual malice on the part of President Crossfield, then the defendants were liable.

What was the duty of President Crossfield to the father of young Baskett under all the circumstances as they existed on October 1st and 4th, 1918, at the date of the writing of the two letters? The president of the school was *in loco parentis* to young Baskett as a student. There was a relation of trust and confidence between the two and between the president of the school and the father of the pupil; and the president of the school being in charge of the student body owed a duty to the father and family of young Baskett, which he could not discharge except by faithfully, fully and accurately reporting to the father and family the progress and deportment of the student. In the performance of this duty the president of the university had the right to act, write and say of and concerning the dismissed student what a reasonably prudent and considerate official of a college would under like circumstances have done and said. If he had done and said less than is shown by the letters he would have been remiss in duty; if he had done more he would have subject-

ed himself to the charge of being actuated by malice. In this case Dr. Crossfield appears to have done only what his duty required of him. He gently and rather apologetically wrote and sent to the father of the student the two letters of which complaint is made. That these letters were written in the utmost good faith and for the good of the father and the dismissed student is beyond cavil. There is a total absence of evidence tending in the slightest degree to show malice on the part of President Crossfield towards young Baskett or his father. They were not even acquainted, and the president did not know the boy by sight, for he had only been in the school two weeks, and there was a large number of students in attendance at the school. Under the state of pleadings—the answer pleading privileged communications—the burden was upon the plaintiff, Baskett, to show actual malice on the part of President Crossfield and the university, which he was unable to do. In so failing he surrendered his right of recovery and the trial court should have sustained both the motion of the university and President Crossfield for a directed verdict in their favor made at the conclusion of all the evidence. Had President Crossfield, after hearing the complaint against young Baskett and the evidence in support thereof, failed to communicate these facts to the father of young Baskett he would not have been worthy of the presidency of a great educational institution. Having acted in the line of his duty both to the school and community, young Baskett and his father, he as well as the university is blameless and no recovery can be had by Baskett. President Crossfield has entered a motion in this court for a cross-appeal, but he can not have such relief in a common law action unless he had filed motion and grounds for a new trial, in the court below.

For the reasons indicated the judgment is affirmed.

Judgment affirmed.