## HOLDAWAY DRUGS, INC., and David T. Holdaway, Movants,

v.

## Thomas M. BRADEN, Respondent.

Supreme Court of Kentucky.

June 12, 1979.

---

C. Dant Kearns, Stites, McElwain & Fowler, John W. Potter, Porter, Gulick & Potter, Louisville, for movants.

Stanley M. Billingsley, Carrollton, Stephen G. Horner, Louisville, for respondent.

REED, Justice.

This is a defamation action. A discharged employee sued his former employer

for allegedly slanderous statements uttered to an agent for a prospective employer on one occasion and on another occasion overheard by fellow employees and on still another occasion uttered to a parent of a fellow employee. The jury found in favor of the discharged employee and awarded him compensatory but not punitive damages. The former employer appealed to the Court of Appeals where the judgment of the trial court was affirmed. We granted discretionary review. For the reasons later stated, we reverse the decision of the Court of Appeals and remand the cause to the trial court for a new trial.

I

The movant, David Holdaway, is the owner and operator of a drugstore where the respondent, Thomas Braden, was employed as a delivery boy.

According to Holdaway, he noticed a substantial shortage in controlled, Schedule II drugs at his drugstore in January of 1975. He suspected an employee to be responsible. He confided his suspicions to his chief pharmacist, a seventy-year-old man named Carter. Holdaway requested Carter to be on the alert. Shortly thereafter, Carter reported that he had seen Braden go into a restroom with a bottle of Parest (a Schedule II drug) and had also seen Mould (another employee whose civil action for defamation against Holdaway has been settled and who is not a party to the appeal) remove a bottle of medication from one shelf to another. Holdaway testified that on the basis of the Carter report and his own suspicions he discharged Braden and Mould in a conversation at which other employees of his drugstore were present and within hearing. Braden introduced evidence that Holdaway repeated his accusations to Frank May, a friend of Braden's and to the mother of Mould.

Holdaway sought to introduce evidence that during an investigation of the drug loss by the Kentucky Drug Enforcement Agency, all employees of the drugstore, except Braden and Mould, voluntarily took a lie detector test and were exonerated. Braden and Mould refused to take the test. The trial judge excluded this evidence. Holdaway also sought to introduce evidence that Braden was a drug user. Although Braden introduced evidence that Holdaway's daughter was a drug user who was a cause of great concern to her father, the trial judge excluded Holdaway's proffered evidence that Braden was a drug user.

It was established that after his discharge, Braden applied for employment with various life insurance companies. These companies employed Retail Credit Corporation (now Equifax Services) to investigate Braden's applications for employment. Retail Credit contacted Holdaway and asked about Braden's employment with him and the reasons for his leaving it. Holdaway replied that Braden had been a "very good" employee and that he had had no problems with him "up until the present time" and he was "under suspicion of theft of narcotics." Retail Credit reported this information to the life insurance companies and this information influenced them not to hire Braden.

Under instructions, which we will later discuss in more detail, the jury returned a verdict for Braden against Holdaway. The jury awarded damages as follows: $1,850.00 for "compensatory damages"; $2,100.00 specifically for "loss of income"; punitive damages "0." Judgment was entered for Braden against Holdaway in the amount of $3,950.00.

II

Over Holdaway's specific objections, the trial judge not only did not instruct the jury that the communication to Retail Credit was conditionally privileged, but gave a single instruction covering the admitted communication to Retail Credit and the disputed nonprivileged communications to other persons.

The instructions permitted the jury to imply malice from the defamatory nature of the words used as to all communications the jury believed were made for the purpose of imposing liability for compensatory

damages. The instructions, however, did require the jury to find actual malice, defined as ill will, hatred or wrongful motive, if in the exercise of discretion they determined that punitive damages should also be imposed.[1]

Braden conceded at oral argument that the communication from Holdaway to Retail Credit was conditionally privileged under federal statutory law and under Kentucky common law.[2]

■ In considering Holdaway's assertion that the jury instructions were prejudicially erroneous, we first issue a caveat. Since the parties did not contend in the trial court, the Court of Appeals or in this court that the present Kentucky decisional law on defamation should be re-examined, we confine our consideration to the case as practiced.

In our view, the jury instructions were prejudicially erroneous because they impermissibly allowed the jury to impose strict liability for the communications made pursuant to an admitted conditional privilege.

Prosser's comments point up the problem:

"Furthermore, the qualified privilege will be lost if the defendant publishes the defamation in the wrong state of mind.

The word 'malice,' which has plagued the law of defamation from the beginning, has been much used in this connection, and it frequently is said that the privilege is forfeited if the publication is 'malicious.' It is clear that this means something more than the fictitious 'legal malice' which is 'implied' as a disguise for strict liability in any case of unprivileged defamation."

Prosser, *Law of Torts,* Sec. 115 at 794 (4th ed. 1971) (footnote omitted).

■ We consider the terms "qualified privilege" and "conditional privilege" to be synonymous.

In *Weinstein v. Rhorer,* 240 Ky. 679, 42 S.W.2d 892, 895 (1931) the court stated: "The only difference between cases where qualified privilege is relied on and cases where the defense is a general denial or justification is that where privilege is pleaded the burden of showing actual malice is put upon the plaintiff." *Massengale v. Lester,* Ky., 403 S.W.2d 701 (1966) involved the defense of absolute privilege in a defamation action. There, the court declared: "The [trial] court did not instruct on privilege, and it is our conclusion that the omission was a prejudicial error." *Id.* at 703.

---

1. So far as is pertinent, the instructions were:

[Liability for Compensatory Damages]

"1. If you believe from the evidence that at the times and places mentioned in the evidence, the defendant, David Holdaway, falsely and maliciously, spoke within the hearing of third persons words about the Plaintiff, Thomas Braden, . . . which accused [him] of the commission of the crime of theft of narcotics from the defendant drugstore, then you will find for . . . Thomas Braden . . . but unless you so believe from the evidence, then you will find for the defendant.

[Amount of Compensatory Damages]

2. (A) if you find for the plaintiff, Thomas Braden, you will award him such sum in damages as you believe from the evidence will fairly and reasonably compensate him for his loss of income not to exceed the sum of $2,100.00; for any humiliation or mortification caused his feelings by the speaking of the words concerning him, and for any damage done his reputation thereby not to exceed $17,900.00, your total award for compensatory damages not to exceed the sum of $20,000.00, . . .

[Definitions of Malice and Actual Malice]

3. 'Malice' in law, arises from the voluntary false speaking of slanderous words imputing crime to another in the hearing of some other person or persons. By 'actual malice' is meant ill will, hatred or wrongful motive.

[Punitive Damages]

4. If you find for the [plaintiff], you may in the exercise of sound discretion in addition to compensatory damages award such punitive damages as you believe from the evidence the [plaintiff] ought to recover if the speaking of the words complained of was induced from actual malice or reckless disregard of the [plaintiff's] rights on the part of the defendant, or if he spoke the words knowing them to be false, not to exceed on this account the sum of $10,000.00."

2. 15 U.S.C.A. Sec. 1681h(e); *Hart v. Reed,* 40 Ky. (1B.Mon.) 166 (1838), *Baskett v. Crossfield,* 190 Ky. 751, 228 S.W. 673, 675 (1920), *Wolff v. Benovitz,* 301 Ky. 661, 192 S.W.2d 730, 733 (1946).

A three-judge panel of the Court of Appeals upheld the trial court's judgment with one judge dissenting. The majority seemed to regard the erroneous instructions to be cured by the verdict. They stated: "From the instructions given, in order to find for the [plaintiff] the jury had to have found the appellant published the statements with malice. Malice operates to destroy the qualified privilege. In any event, the jury found for [plaintiff] and necessarily found the appellant acted with malice. The submission of instructions on the qualified privilege with the disclaimer that malice destroys the privilege would not have changed the outcome of the jury's decision, and the appellant cannot claim prejudice." The dissenter, Judge Howerton, aptly observed: "The majority concluded that the jury found for the plaintiff, and necessarily found that appellants acted with malice. I can agree only to the point that they found implied malice, because the jury in fact rejected any punitive damages which required a finding of actual malice." The dissent concluded that it was prejudicial error not to inform the jury of the privilege and the necessity of actual malice to overcome the privilege, which related to that portion of the award given for loss of wages caused by the unfavorable report to Retail Credit. We agree with that conclusion.

Holdaway does not claim that his report to Retail Credit was not actionable at all as the publication of suspicion in a conditionally privileged context.[3] He admits that if he is found to have been motivated by actual malice, as those terms are defined in the trial court's instructions relative to punitive damages, he is subject to liability for abuse of the conditional privilege.

It is clearly apparent that the alleged harm caused by the claimed abuse of the conditional privilege is severable from the alleged harm caused by the claimed unprivileged defamation. Therefore, we hold that the instructions should be recast to separate the privileged from the unprivileged communications. The jury should be advised that Holdaway is not responsible for any damages caused by his report to Retail Credit unless he was motivated by "actual malice," as those terms are defined in the instructions.[4] He remains subject to strict liability, for all practical purposes, for the harm caused by proven defamation uttered in a non-privileged context. This facet is adequately covered by the trial court's instructions as given. Holdaway is entitled to a new trial because of the prejudicially erroneous instructions.

### III

Holdaway complains about two rulings of the trial judge which excluded proffered evidence.

### A.

■ Holdaway offered evidence that all of the employees of the drugstore except Braden and Mould took a polygraph test. The polygraph exonerated the employees who were examined. Braden and Mould refused to take the test. The Court of Appeals' panel unanimously held that the trial judge properly excluded this evidence. The Court of Appeals relied on *Penn v. Commonwealth*, Ky., 417 S.W.2d 258 (1967), which held that since the results of a polygraph test were inadmissible the refusal to take such a test "has no evidentiary significance whatever." *Id.* at 258. A majority of this Court[5] has concluded that this evidence was relevant and admissible for the limited purpose of establishing that Holdaway's mental state was one of good faith without malice or ill will. Upon retrial, this evidence should be admitted accompanied by an admonition, if requested, that the evidence shall be considered by the jury, for such weight as they may conclude to give it, only on the issue of Holdaway's mental state as it relates to good faith or actual malice or ill will on his part and shall be

---

**3.** *See* Restatement (Second) of Torts, Sec. 602, Comment b, Illustration 1 at 291 (1977).

**4.** *Id.*, Sec. 599, Comment b at 286.

**5.** Not including the writer.

considered by them for no other purpose whatever.[6]

### B.

 Holdaway also complains that the trial judge erred when he excluded evidence that Braden was a drug user. Holdaway argues that this evidence was relevant to his defense of truth to the claim of defamation. He asserts that motive is a significant element in proving theft. The Court of Appeals' panel upheld the exclusion of the evidence. Judge Howerton again dissented. He stated: "In a defamation case, truth of the accusations is a complete defense. Proof of a motive is always relevant when attempting to prove that someone committed a particular act. If it was known that a person used drugs illegally, such proof would logically provide evidence of a motive for stealing drugs."

In this case, Braden invoked the process of a public trial on a claim of defamation. He introduced evidence that Holdaway's daughter was a drug user and had been "barred" from the drugstore. When the elements are balanced, we believe that the trial judge erred in excluding this evidence. Since the judgment must be reversed because of the jury instructions, we need explore this phase no further than to say that if the situation is substantially the same on the new trial, the "drug user" evidence should be admitted as relevant evidence whose probative value is not outweighed in the circumstances presented in this case by other elements which would permit its exclusion.

The decision of the Court of Appeals is reversed, the judgment of the Jefferson Circuit Court is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

All concur except REED, J., who dissents from the holding in part III A of the opinion.

---

6. It is the conclusion of the writer that the admissibility of this evidence should be left to the discretion of the trial judge who should

exclude it if its probative value is substantially outweighed by the danger of misleading the jury and creating an avenue of unfair prejudice.