14 F.3d 603
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Percy L. WRIGHT, Plaintiff-Appellant,
v.
JEFFERSON COUNTY POLICE DEPARTMENT, Officer D. Colebank,
Officer S. Salyard, Detective Bob Roberts,
Superamerica Group, Inc. and Unknown
Employee of Superamerica
Group, Inc.,
Defendant-Appellees.
 No. 92-6203.
 United States Court of Appeals, Sixth Circuit.
 Dec. 8, 1993.
 
 On Appeal from the United States District Court for the Western District of Kentucky, No. 91-00086; Ronald E. Meredith, C.J.
 W.D.Ky.
 AFFIRMED.
 BEFORE: KENNEDY, MILBURN and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Percy L. Wright appeals the order of the District Court granting summary judgment in favor of defendants, Officers Colebank and Salyard,[1] in this 42 U.S.C. Sec. 1983 action. Additionally, plaintiff appeals the order of the District Court granting summary judgment in favor of defendant SuperAmerica and its employee in an action for slander. For the reasons stated below, we affirm the District Court's order granting summary judgment in favor of all defendants.
 
 I.
 
 2
 On September 29, 1990, plaintiff, his wife and two friends traveled from Columbus, Ohio to Louisville, Kentucky to see a football game. Plaintiff drove a customized 1988 Ford van, bearing Ohio license plates, number "PLW 9." At that time, plaintiff, a black man, was wearing khaki-colored pants and a black shirt.
 
 
 3
 After the football game, plaintiff and his friends drove back to their room at the Red Roof Inn. Along the way, plaintiff stopped at a restaurant and a convenience store near the Red Roof Inn. After these two stops, plaintiff and his party then went to their motel room. SuperAmerica, a convenience food/gas station, is located in the same immediate area as the restaurant and convenience store. A large continuous asphalt area joins SuperAmerica with these buildings. The road to the Red Roof Inn passes between SuperAmerica and other buildings.
 
 
 4
 Jetta Ellis and William Burke worked as sale/stock clerks at SuperAmerica. At this store, SuperAmerica has a display of antifreeze outside. Near 7:30 p.m., Burke observed a black male, dressed in a black shirt and khaki pants, carry away some antifreeze from the outside display. Ellis went outside and observed the individual putting antifreeze into a van which was parked near the convenience store, across the asphalt. Ellis watched the van drive to the Red Roof Inn. Ellis then walked to the Red Roof Inn parking lot, and recorded the license number on the van as "PLW 9." She watched the four occupants in the van enter the motel. After the individuals entered the motel, Ellis looked into the rear window and saw cases of SuperAmerica antifreeze. Ellis then called the Jefferson County Police to report the theft.
 
 
 5
 Officer Colebank responded to the call and took the statements of both Ellis and Burke. Officer Colebank then investigated the van and used his flashlight to determine if there was any antifreeze in the van. Colebank did not see any antifreeze. After Colebank located and spoke with the plaintiff, he concluded that plaintiff fit the description of the individual taking the antifreeze. Colebank advised plaintiff of his constitutional rights and informed the plaintiff that SuperAmerica would not prosecute if the antifreeze was returned. Plaintiff denied taking the antifreeze but offered to pay for it.
 
 
 6
 At this time, Officer Salyard transported Ellis to the Red Roof Inn parking lot to identify plaintiff and his van. She identified the van as the van involved in the theft. Although plaintiff's clothing matched the thief's, Ellis could not positively identify plaintiff as the thief because she had viewed the thief from the rear. Ellis said, "I don't know who he is, but that's the van over there."
 
 
 7
 Believing probable cause existed that the van was involved in the commission of a felony, Officer Colebank decided to impound the van in accordance with Kentucky law.[2] Plaintiff, who was not arrested, returned to Columbus. On October 1, 1990, plaintiff voluntarily returned to Kentucky for questioning. No charges were ever filed against plaintiff and on Wednesday, October 3, 1990, plaintiff's van was released.
 
 
 8
 Plaintiff filed a 42 U.S.C. Sec. 1983 action against the officers and the Jefferson County Police Department alleging that his van was unconstitutionally seized in violation of the Fourth Amendment, the due process clause and the equal protection clause. Plaintiff also filed suit against SuperAmerica and its employees for slander. Plaintiff's suit was initially assigned to a magistrate judge. In October, 1991, all defendants moved for summary judgment which the magistrate judge recommended be granted. The District Court then entered an order granting summary judgment for the defendants and adopting the magistrate judge's findings and conclusions. Plaintiff filed this timely appeal.
 
 II.
 
 9
 This Court reviews a district court's grant of summary judgment de novo, "making all reasonable inferences in favor of the non-moving party to determine if a genuine issue of material fact" exists. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Viewing the evidence in the light most favorable to the non-moving party, this Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).
 
 III.
 
 10
 To establish the personal liability of the officers under 42 U.S.C. Sec. 1983, the plaintiff must demonstrate that the officers deprived him of his constitutional or statutory rights under color of state law. Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ., 926 F.2d 505, 511 (6th Cir.), cert. denied, 111 S.Ct. 2917 (1991). Plaintiff alleges that his van was unconstitutionally seized, denying him the use and ownership of the van in violation of his Fourth Amendment, due process and equal protection rights. However, government officials "performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Under this objective test, an official will be immune "if officers of reasonable competence could disagree" on whether the challenged actions violated the plaintiff's rights. Malley v. Briggs, 475 U.S. 335, 341 (1986).
 
 
 11
 The issue presented is whether a reasonable officer, in light of the clearly-established law governing warrantless seizures and the information the officers possessed, could have believed the warrantless seizure of plaintiff's van was lawful. See Anderson v. Creighton, 483 U.S. 635, 641 (1987). A search or seizure without a warrant issued upon probable cause is "per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One well-established exception is the seizure of an automobile. This Circuit has held that the warrantless seizure of a vehicle in a public place, based upon probable cause, falls within the automobile exception to the Fourth Amendment. Autoworld Specialty Cars, Inc. v. United States, 815 F.2d 385, 389 (6th Cir.1987). Thus, the warrantless seizure of the van does not violate clearly-established law if a reasonable officer would believe probable cause existed to seize the van.
 
 
 12
 When the officers seized the van, Ellis had positively identified the customized van with license plate "PLW 9" as being involved in the antifreeze theft. The officers had located the van at the Red Roof Inn, which is across the street from SuperAmerica. Additionally, the officers had determined that plaintiff fit Ellis' description of the thief--black male, wearing khaki pants and a black shirt. Finally, under Kentucky law, property used in furtherance of a theft is subject to forfeiture and an officer has a duty to seize any property subject to forfeiture. See Ky.Rev.Stat.Ann. Secs. 514.030, 514.130. From these facts, a reasonable officer could conclude that probable cause existed to associate the van with criminal activity and we therefore conclude that the officers did not violate clearly-established constitutional rights by impounding the van. Thus, the officers are entitled to qualified immunity and the District Court properly granted summary judgment for the officers.
 
 
 13
 Plaintiff argues that the officers only decided to impound the van because Officer Colebank was provoked by plaintiff's friend.[3] Therefore, plaintiff claims that the officers' intent in impounding the van presents a material issue of fact which precludes summary judgment. However, the Harlow standard for qualified immunity is an objective standard. See Ecclesiastical Order of the Ism of Am, Inc. v. Chasin, 845 F.2d 113, 117 (6th Cir.1988). The subjective views of the officers are irrelevant for purposes of determining qualified immunity to a section 1983 action based on an unreasonable search and seizure. However, when intent is an element of the substantive claim, the court must examine the officer's intent under a qualified immunity analysis to determine if he has violated "clearly established" law. See Poe v. Haydon, 853 F.2d 418 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989).
 
 
 14
 Plaintiff's allegation that the officers impounded his van in violation of his equal protection rights requires an analysis of the officers' intent when they impounded the van because intent is an element of an equal protection violation. However, plaintiff's sole allegation with regard to unconstitutional motive is that the police impounded his car because plaintiff's friend, "started running his mouth." This statement merely illustrates that the police may not have impounded the van without the friend's intervention. However, the police are not under a constitutional duty to negotiate. Rather, they had sufficient evidence to conclude that the van was involved in a theft and therefore did not violate clearly-established law by impounding it. Thus, we affirm the District Court's order granting summary judgment for the officers on the basis of qualified immunity.
 
 IV.
 
 15
 Plaintiff filed a slander action against SuperAmerica and Jetta Ellis[4] for two statements made by Ellis to the police. Plaintiff specifically referred to Ellis' statement to the police that "a black man had taken eighteen gallons of antifreeze." Additionally, plaintiff complains that Ellis slandered him when she went to the Red Roof Inn with Officer Salyard and said, "I don't know who he [Wright] is, but that's the van over there." Because these statements were made during the course of employment, plaintiff argued that SuperAmerica was also liable.
 
 
 16
 The District Court granted summary judgment dismissing all claims against SuperAmerica and its employees, ruling that the statements to the police were protected by a qualified privilege.
 
 
 17
 While Kentucky law clearly protects statements to police through privilege, see Rutherford v. Church, 49 S.W.2d 326 (Ky.1932), SuperAmerica disputes whether the employee's statements were either absolutely privileged or protected by a qualified privilege. Regardless of which privilege applies, SuperAmerica is entitled to summary judgment. If the statements are protected by an absolute privilege, defamatory words, even if spoken with malice, are not actionable. See Catron v. Jasper, 198 S.W.2d 322, 324 (Ky.1946). Alternatively, if the privilege is qualified, defamatory statements are only actionable if uttered with malice. Kentucky courts have defined malice as "ill will, hatred or wrongful motive." Holdaway Drugs, Inc. v. Braden, 582 S.W.2d 646, 649-50 (Ky.1979).
 
 
 18
 Plaintiff argues that Ellis' statements are not protected by a qualified privilege because Ellis acted with malice when she made her statements to the police. For example, plaintiff argues that Ellis knew her accusations were false because the van contains a bed which runs the width of the van at the back. This bed, plaintiff argues, makes it impossible to store anything in the rear of the van. Thus, plaintiff argues that Ellis must have known that her claims of seeing the antifreeze on the floor of his van were false. Even if Ellis was incorrect when she made these statements, plaintiff has not produced any evidence that Ellis knew her accusations were false when she made them and simply acted out of ill will or hatred. In fact, neither SuperAmerica employee knew the plaintiff before the antifreeze theft incident. Additionally, Ellis merely reported to the police what she had seen. There is absolutely no evidence that the employees reported the theft to the police and incriminated plaintiff because of ill will, hatred or wrongful motive. Thus, we conclude that Ellis' statements are privileged and therefore affirm the District Court's order granting summary judgment for SuperAmerica and Ellis.
 
 V.
 
 19
 For the reasons stated, we AFFIRM the District Court's order granting summary judgment in favor of all defendants.
 
 
 
 [1]
 The District Court also granted summary judgment in favor of Jefferson County and Detective Roberts. Plaintiff has not addressed the order dismissing the claims against either of these parties. Therefore, any complaint with regard to this ruling is waived by virtue of abandonment. Boyd v. Ford Motor Co., 948 F.2d 283, 284 (6th Cir.1991), cert. denied, 112 S.Ct. 1481 (1992)
 
 
 [2]
 See Ky.Rev.Stat.Ann. Secs. 514.030, 514.130
 
 
 [3]
 Plaintiff argues that the officers did not intend to impound the van until one of his friends came down to the Red Roof Inn parking lot and started "running his mouth." Plaintiff specifically refers to a statement by Officer Colebank in his deposition. Joint App. at 220. Prior to this time, the officer had told plaintiff that if he returned the antifreeze there would be no prosecution. Plaintiff had asked if he could pay for it and whether the store would take a credit card. After the friend intervened, the officer decided to treat it as a straight investigation of a crime
 
 
 [4]
 Although the complaint alleged a slander action against an unnamed SuperAmerica employee, both parties have treated Jetta Ellis as this unnamed employee in their briefs