862 F.2d 609
 49 Empl. Prac. Dec. P 38,658
 Patricia G. MATULIN, Plaintiff-Appellee,
v.
VILLAGE OF LODI, Edward Richardson, Village of Lodi Police
Department, and Stefan Siverd, in their official
and individual capacities, Defendants- Appellants.
 No. 87-3957.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 14, 1988.
Decided Dec. 6, 1988.
 
 Lawrence J. Whitney (argued), Burdon and Merlitti, Akron, Ohio, for defendants-appellants.
 Edward L. Gilbert (argued), Parms, Purnell & Gilbert, Akron, Ohio, for plaintiff-appellee.
 Before KRUPANSKY and GUY, Circuit Judges, GRAHAM, District Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Plaintiff, Patricia Matulin, a former part-time police officer, filed suit in federal district court for the Northern District of Ohio against her former employer, the Village of Lodi. The suit also named the Village of Lodi Police Department, the mayor, and the police chief. The complaint included claims of discrimination based on sex and handicap, retaliation under Title VII for participating in a charge of discrimination, retaliation for the exercise of first amendment rights, a violation of her right to due process, breach of contract, and intentional infliction of emotional distress. With respect to her first amendment claim, plaintiff alleged that she had been wrongfully discharged in retaliation for making statements to a newspaper reporter regarding employment discrimination claims which she had previously filed with the Ohio Civil Rights Commission. The first amendment claim was submitted to a jury which returned a verdict in favor of plaintiff awarding her $75,000 in damages. The remaining issues were resolved by the court prior to trial. The court dismissed the claims relating to employment discrimination and the alleged intentional infliction of emotional distress because there was no evidence to support such claims. The court also held the plaintiff had a limited property interest in her job, and that the defendants deprived her of this property interest without due process of law by discharging plaintiff without affording her a hearing. The defendants appeal both the jury's verdict granting the plaintiff damages for the violation of her first amendment rights, and the district court's judgment awarding plaintiff two weeks part-time pay for the violation of her due process rights. Plaintiff has not filed a cross-appeal with respect to her other claims. For the following reasons, the judgment in favor of plaintiff awarding damages for violation of her first amendment rights is affirmed, and the judgment in plaintiff's favor on her fourteenth amendment due process claim is reversed.
 
 I.
 
 2
 In November of 1984, plaintiff accepted a position as a part-time police officer in the Village of Lodi Police Department. In March of 1985, a full-time officer resigned and plaintiff applied for the position. On April 13, 1985, Police Chief Stefan Siverd informed plaintiff that he intended to hire another applicant, a male, for the position. One of the reasons given for the decision was that plaintiff had previously suffered a knee injury, and there was some question as to whether she would be able to perform her duties on a full-time basis. On April 22, 1985, plaintiff filed a claim with the Ohio Civil Rights Commission alleging that she had been discriminated against based on her sex and her knee injury, which she claimed constituted a handicap. Thereafter, the male applicant advised the police chief that he had accepted another job and therefore could not accept the offer to work as a full-time police officer for the Village of Lodi. On May 1, 1985, the plaintiff met with Chief Siverd and after some discussion, plaintiff was offered the full-time position. On May 2, 1985, the Village Council and the mayor accepted the police chief's recommendation that plaintiff be appointed to the full-time position. Plaintiff, however, was not immediately sworn in as a full-time officer but, rather, continued to work on a part-time basis.
 
 
 3
 Seven days after the Village Council approved the plaintiff's appointment, an article appeared in the local weekly newspaper describing the employment discrimination charges which the plaintiff had previously filed against the Village. The article appeared under the title "Officer alleges descrimination [sic] By Lodi Police Department." After detailing the substance of the employment discrimination claim and the procedures of the Ohio Civil Rights Commission, the article described an interview with the plaintiff:
 
 
 4
 Matulin, in an interview last weekend, said the village intended to hire a Lodi man, Jeff Plute, of Janice Street, until it learned of her discrimination charge earlier in the week.
 
 
 5
 She says village officials told her that Plute was offered another job between the time Lodi tentatively decided to hire him and when his psychological tests came back, which would have enabled Plute's official hiring.
 
 
 6
 Matulin rejects this reasoning, though.
 
 
 7
 "Everyone is very concerned about why I got the job right after the papers were served."
 
 
 8
 Matulin says she decided to go ahead with her complaint despite the job offer because "I've decided to stand up and let people know" what's going on [in] the Police Department.
 
 
 9
 "I am not looking for financial gain," she says, "I want my credibility restored and my name cleared."
 
 
 10
 Matulin says that if the village had hired Plute, it would have gotten an officer with less experience and less training than she has.
 
 
 11
 ....
 
 
 12
 Shortly after she started as a Lodi officer, Matulin injured her leg in a fight while making an arrest. She says village officials were using this as one reason why they did not want to hire her full-time.
 
 
 13
 However, Matulin says the injury has not been serious enough to keep her from performing her duties.
 
 
 14
 In fact, she says, since Bannerman left the Lodi force, there was one instance when she worked 90 hours in a two-week period because the police force was short-handed. This, she says, should have shown that she could still do the job.
 
 
 15
 After reviewing this article, Police Chief Siverd contacted the reporter who wrote the article and verified the statements attributed to the plaintiff. Although the article was published after plaintiff's appointment, the interview took place prior to that time. On May 13, Chief Siverd submitted a letter to the Village Council withdrawing his recommendation that plaintiff be hired as a full-time officer and further recommended that she be terminated immediately from her present probationary position as a part-time officer. The Council voted to accept the police chief's recommendation, and the chief called the plaintiff that day to inform her of the Council's decision. On May 14, 1985, Chief Siverd sent a letter to plaintiff which stated in part:
 
 
 16
 At the May 13, 1985 Village of Lodi Council meeting, it was noted by myself, that your probationary employment as a part-time police officer would be ending on May 26, 1985. At this meeting I made no recommendation as to the continuation for employment beyond the probationary period.
 
 
 17
 This lack of a recommendation results in the immediate termination of your employment with the Village of Lodi.
 
 
 18
 At trial, Chief Siverd testified that the statements made by the plaintiff in the newspaper article violated the written rules of the police department relating to confidentiality and loyalty.[1] Chief Siverd also testified that the plaintiff's termination was based at least in part, on previous infractions to the work rules which had resulted in verbal reprimands.
 
 
 19
 As previously noted, plaintiff prevailed on her claims based on the first and fourteenth amendments. The district court subsequently denied the defendants' motion for judgment notwithstanding the verdict.
 
 II.
 
 20
 Defendants raise five issues on appeal. First, defendants argue that the statements of the plaintiff which appeared in the newspaper article were not constitutionally protected because they did not involve matters of public interest. Second, defendants contend that the newspaper article was not a substantial or motivating factor in the plaintiff's termination. Third, the defendants argue that the police department's interest in maintaining discipline and morale outweighs the plaintiff's first amendment rights. Fourth, defendants claim that the damage award of $75,000 was excessive. Fifth and finally, defendants argue that plaintiff did not have a property interest in her job with the Lodi Police Department, meaning that defendants cannot be held liable for terminating her employment without affording her a hearing. We address each of these issues separately.
 
 A. First Amendment Claim
 
 21
 "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, --- U.S. ----, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). In Rankin, the United States Supreme Court reaffirmed the balancing test which is used to determine whether a public employee's speech deserves constitutional protection. The test requires "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of public services it performs through its employees." Rankin, 107 S.Ct. at 2896 (quoting Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)).
 
 1. Matter of Public Concern
 
 22
 The Supreme Court has stated that "[t]he threshold question in applying this balancing test is whether [the employee's] speech may be 'fairly characterized as constituting speech on a matter of public concern.' " Rankin, 107 S.Ct. at 2896-97 (quoting Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48, 103 S.Ct. at 1690-91.
 
 
 23
 In the instant case, we agree with the district court that the statements made by the plaintiff which appear in the article implicate matters of public concern, and therefore fall within the protection of the first amendment. First, we note that the plaintiff's statements involve allegations of invidious discrimination by a public employer based on the sex and perceived handicap of a public employee. Cf. Connick, 461 U.S. at 149 n. 8, 103 S.Ct. at 1691 n. 8 (allegations of racial discrimination by a public employer are "a matter inherently of public concern."). Second, we note that the plaintiff's statements were made in response to an inquiry regarding an employment discrimination claim she had already filed with the Ohio Civil Rights Commission. Therefore, the basic allegations of sex and handicap discrimination were already a part of the public record.
 
 
 24
 We note as a third factor in her favor that the plaintiff did not initiate the interview but, rather, was contacted by a newspaper reporter who had learned of the plaintiff's pending employment discrimination claims. Recently, the Court of Appeals for the Third Circuit held:
 
 
 25
 Thus, we hold that when a public employee participates in an interview sought by a news reporter on a matter of public concern, the employee is engaged in the exercise of a first amendment right to freedom of speech, even though the employee may have a personal stake in the substance of the interview.
 
 
 26
 Rode v. Dellarciprete, 845 F.2d 1195, 1202 (3d Cir.1988). Rode, a public employee, told a newspaper reporter that she had been harassed and mistreated because of her involvement in a prior racial discrimination suit against the employer. Plaintiff subsequently received a two-day work suspension because of her participation in the interview. The court of appeals held that statements relating to charges of discrimination leveled at public employers and reported upon by newspapers clearly involved matters of public concern. While the defendants would have us hold that plaintiff's speech related solely to private complaints, the Rode finding of public concern is here strengthened by the fact that the plaintiff did not solicit the attention of the media, but simply responded to questions regarding an existing controversy. Under these circumstances, we find that the statements attributed to Ms. Matulin in the newspaper article were protected by the first amendment because they involved a legitimate matter of public interest.
 
 2. Substantial or Motivating Factor
 
 27
 The second major issue raised by the defendants focuses on the causation element of plaintiff's claim. In Mount Healthy City Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court held that the plaintiff has the burden of proving that his speech was a "substantial" or "motivating" factor in the employer's decision to terminate his employment. Id. at 287, 97 S.Ct. at 576. The burden then shifts to the employer, who must be given an opportunity to prove that the plaintiff would have been fired even if he had not engaged in the protective conduct. Id. The matter of causation is an issue of fact which must be decided by the jury. See Hildebrand v. Board of Trustees, 662 F.2d 439, 443 (6th Cir.1981), cert. denied, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982). In the instant case, the court posed a specific interrogatory to the jury: "Do you find that the motivating or substantial factor in Pat Matulin's termination was the exercise of her first amendment rights?" The jury answered this question in the affirmative and judgment was entered in favor of plaintiff. The defendants filed a motion for judgment notwithstanding the verdict, but the district court denied the motion.
 
 
 28
 On appeal, defendants argue that the jury's finding of causation was contrary to the weight of the evidence because the plaintiff would have been fired even if she had not made the statements which were quoted in the newspaper article. Defendants contend that "the real reason for Matulin's termination was not her speech, but the lack of trust she had created in the department." We find this argument to be without merit. There is ample evidence in the record (including the testimony of the plaintiff, the police chief, and the mayor of Lodi) from which the jury could conclude that the plaintiff's statements were a substantial factor in the decision to terminate her employment. Moreover, the sequence of events in the instant case clearly demonstrates that the plaintiff's termination was in direct response to the publication of the newspaper article.
 
 
 29
 We note that this court has previously upheld a jury verdict in favor of a public employee who alleged a first amendment violation based on a retaliatory discharge in circumstances where the evidence of causation was much less compelling than the facts presented in the instant case. See Ratliff v. Wellington Exempted Village Schools Board of Education, 820 F.2d 792 (6th Cir.1987). In Ratliff, the defendants expressly denied that the non-renewal of the plaintiff's employment contract was in retaliation for his public criticism of the school board. Moreover, there was evidence that the plaintiff's job performance was substandard. Nevertheless, we held that the circumstantial evidence was sufficient to permit a reasonable inference that the plaintiff was not rehired in retaliation for making critical comments during a public speech. Ratliff, 820 F.2d at 796. In contrast, the defendants in the instant case clearly admitted that the plaintiff's statements quoted in the newspaper article were a factor in the decision to terminate her employment. The only other reasons for dismissal were minor infractions of the work rules--infractions about which the hiring authority had been told before they offered the full-time position to plaintiff. Given the timing of the dismissal, the admissions of the defendants, and the lack of a legitimate alternative justification, we find ample evidence from which the jury could reasonably conclude that plaintiff's exercise of her first amendment rights was a substantial motivating factor in the termination of her employment.
 
 3. Balancing Test
 
 30
 We now consider the defendants' argument that the plaintiff's discharge was justified because of the detrimental effect her speech had on the police department. As previously noted, the balancing test set forth by the Supreme Court in Pickering v. Board of Education requires the court to balance the employee's first amendment interest in freedom of expression against "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568, 88 S.Ct. at 1734. "The State bears a burden of justifying the discharge on legitimate grounds." Rankin, 107 S.Ct. at 2898. In assessing the effect of the protected speech, the court should consider "whether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." Rankin, 107 S.Ct. at 2899.
 
 
 31
 In the instant case, defendants argue that the statements created a "lack of trust" between plaintiff and her immediate supervisor, Police Chief Siverd. We decline to grant much weight to this argument, noting first that the statements attributed to the plaintiff in the article were neither offensive nor insulting. Plaintiff did not make any personal attacks on the chief of police or any other individuals. In fact, Chief Siverd's name does not even appear in the article. Second, we note that the defendants did not present any evidence at trial regarding adverse impact on departmental performance as a result of the plaintiff's statements. Given the factual circumstances of this case, we agree with the district court that the plaintiff's first amendment interests in responding to inquiries regarding her pending discrimination claims against her public employer outweigh the employer's interests in suppressing the expression of such statements.
 
 4. Damages
 
 32
 Defendants further claim on appeal that the damages awarded by the jury were excessive. The jury returned a verdict awarding $75,000 in damages to the plaintiff. The district court's instructions to the jury were limited to the issue of compensatory damages, and the jury was expressly instructed not to impose punitive damages. As with the other issues raised in this appeal, our scope of review is extremely limited. A damage award cannot be overturned unless it is so disproportionately large as to "shock the judicial conscience." Thompson v. National Railroad Passenger Corporation, 621 F.2d 814, 827 (6th Cir.), cert. denied, 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980). In the circumstances of this case, we cannot say that our collective "conscience" is shocked by the award of $75,000 to the plaintiff.
 
 B. Fourteenth Amendment Claim
 
 33
 Finally, we consider whether the district court was correct in ruling that plaintiff had a protected property interest in completing a probationary term of office, and was thus deprived of that property right without due process of law by the defendants' decision to terminate her employment without first affording her a hearing.
 
 
 34
 In Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court held that when state law creates a property interest in continuing employment, a public employer may not deprive an employee of that property interest without complying with the requirements of procedural due process. In the instant case, it is undisputed that the plaintiff was not afforded a hearing either before or after the termination of her employment. Defendants argue that no hearing was necessary because the plaintiff was a probationary employee at the time of her termination and therefore did not have a statutory right of continued employment.
 
 
 35
 In order to determine whether the requirements of due process apply, we must examine the relevant state statutes to determine the threshold issue of whether the plaintiff had a property interest in her continued employment. Property interests are not created by the federal Constitution, but from independent sources, often state law. See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Ohio law provides for appointment of village officers who "shall continue in office until removed therefrom for the cause and in the manner provided by section 737.19...." OHIO REV. CODE Sec. 737.16. Section 737.19 provides in part: "The marshal of a village has the exclusive right to suspend any of the deputies, officers, or employees in the village police department [for any denominated reasons shown or] for any other reasonable or just cause." This section also sets forth elaborate procedures for a termination hearing and subsequent appeals of adverse employment decisions.
 
 
 36
 Defendants argue that the just cause requirements contained in section 737.16 and the hearing procedures set forth in section 737.19 do not apply in this case because the plaintiff was on probationary status at the time of her termination. A probationary period is provided for in section 737.17:
 
 
 37
 All appointments made under sections 737.15 and 737.16 of the Revised Code shall be for a probationary period of six months' continuous service, and none shall be finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the mayor shall transmit to the legislative authority of the village a record of such employee's service with his recommendations thereon and he may, with the concurrence of the legislative authority, remove or finally appoint the employee.
 
 
 38
 In interpreting this provision, the district court noted that according to the terms of section 737.17, a probationary employee could be removed or finally appointed based on the recommendation of the mayor "at the end of the probationary period." The section does not expressly provide for the removal of an employee prior to the end of the probation period. Thus, the district court concluded that just cause requirements set forth in sections 737.16 and 737.19 apply equally to permanent full-time Village police officers and to officers on probationary status. Accordingly, the district court held that plaintiff had a limited six-month property interest in her probationary employment and could not be discharged during that period except in accordance with the procedural requirements set forth in section 737.19.
 
 
 39
 We disagree with the district court's interpretation of the Ohio statutes. Nothing in section 737.17 suggests that a probationary employee may only be terminated at the end of the six-month period. In fact, it appears clear that the Ohio legislature, in drafting this statute, did not intend to create a scheme in which an employee could be fired with no hearing on the one-hundred-eightieth day--the end of the six-month period--but was entitled to a hearing if terminated on the one-hundred-seventy-ninth day. Courts in Ohio have held that a probationary employee who completes a probationary term but is not finally appointed has no reasonable expectation of continued employment. See Harvey v. Brumback, 113 Ohio App. 45, 177 N.E.2d 70 (1960). One who has not completed this period surely cannot have greater rights.
 
 
 40
 Most importantly, no Ohio state courts have interpreted section 737.17 in the way the district court proposes, while at least one Ohio appellate court explicitly rejected this view. In Burden v. Village of Blanchester, No. 430 (Ct.App.Ohio Jan. 29, 1982) (Lexis, States Library, Ohio file), an Ohio appeals court held that the termination procedures of section 739.19(B) do not apply to probationary employees who are discharged. The Burden court noted:
 
 
 41
 The very nature of a probationary period is to give the employer the opportunity to observe a candidate on the job to determine his fitness for permanent employment. Given this purpose it is obvious that the legislature did not intend the formal removal proceedings that apply to permanently appointed employees to apply to termination of a probationary employee who is not performing satisfactorily.
 
 
 42
 Burden held that a probationary employee, in Ohio, simply does not have the same interest in her job as a permanent employee, and the probationary employee can be terminated without a hearing before the six-month probationary period is over.
 
 
 43
 We feel compelled to follow Burden. In deciding questions of state law (here the interpretation of a state statute) federal courts must rule as would the state's highest court. Glinsey v. Baltimore & Ohio R.R., 495 F.2d 565 (6th Cir.), cert. denied, 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974). When, as in the present case, the state's highest court has not ruled on the question, the opinions of intermediate appellate courts provide the next best indicia of the state's position. Kochins v. Linden Alimak, Inc., 799 F.2d 1128 (6th Cir.1986); Henry v. McFaul, 791 F.2d 48 (6th Cir.1986). These opinions control, unless other persuasive factors convince the federal court that the state's highest court would disagree with the appellate court determinations. Dale Baker Oldsmobile, Inc. v. Fiat Motors of North America, Inc., 794 F.2d 213 (6th Cir.1986); Kochins, 799 F.2d at 1140. In the instant dispute, we find no reason to disregard the holding of the Ohio appellate court in Burden. The Ohio Supreme Court has given no indication it would disagree with Burden. It is perfectly logical to read section 737.17 as did the court in Burden. Most other states, either by statute or by judicial decision, similarly declare that a probationary employee has no recognizable property interest in a probationary position. Phillips v. Civil Service Commission, 192 Cal.App.3d 996, 237 Cal.Rptr. 751 (1987); Potratz v. Department of Law Enforcement, 154 Ill.App.3d 682, 107 Ill.Dec. 159, 506 N.E.2d 1050 (1987); Dean v. Tensas Parish School Board, 505 So.2d 908 (La.1987); Wagner v. City of Globe, 150 Ariz. 82, 722 P.2d 250 (1986); Housing Authority of Tampa v. Robinson, 464 So.2d 158 (Fla.App.1985); Rafferty v. Commissioner of Public Welfare, 20 Mass.App. 718, 482 N.E.2d 841 (1985). But see Stanfill v. City of Fairbanks, 659 P.2d 579 (Alas.1983) (probationary employee has property interest in employment for whole probationary period).
 
 
 44
 Accordingly, the judgment of the district court is AFFIRMED IN PART and REVERSED IN PART.
 
 
 
 *
 Honorable James L. Graham, United States District Court, Southern District of Ohio, sitting by designation
 
 
 [1]
 Rule 2-16, Public Statements, provides:
 Members should not publicly criticize or ridicule the departmental policies, or other members by speech, writing or other expression, where such speech, writing or other expression is defamatory, obscene, unlawful, undermines the effectiveness of the department, interferes with the maintenance of discipline, or is made with reckless disregard for truth or falsity.
 According to Chief Siverd, the plaintiff violated this provision by making statements which implied that he had lied regarding the reasons for offering plaintiff a full-time position after she had been initially rejected. The Chief also maintained that the plaintiff had exaggerated by claiming that she had worked ninety hours in a two-week period since, according to his review of the payroll records, no officer had worked more than eighty hours during a given two-week period.
 The Chief also believed that the plaintiff's statements violated Rule 2-6, Loyalty, which provides:
 Members shall maintain a loyalty to the department and their associates that is consistent with the law and departmental rules, regulations, policies, and procedures.