**Edward E. RICE, Plaintiff–Appellant,**

v.

**OHIO DEPARTMENT OF TRANSPORTATION; David L. Weir, Director, Ohio Department of Transportation; and Patrick McCray, Deputy Director,**

---

Administrative Affairs, Ohio Department of Transportation, Defendants–Appellees.

No. 86–3312.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 17, 1989.

Decided Oct. 13, 1989.

Andrew J. Ruzicho (argued), Columbus, Ohio, for plaintiff-appellant.

David A. Kopech (argued), Columbus, Ohio, for defendants-appellees.

Before MARTIN and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

This is a federal civil rights action brought by an employee of the Ohio Department of Transportation who alleged that he was passed over for promotion on the basis of considerations that were illegal under the First and Fourteenth Amendments. One of these considerations, the plaintiff claimed, was his failure to engage in political activity on behalf of the party that was in power at the time he was denied promotion.

The district court entered summary judgment for the defendants. Our disposition of the ensuing appeal was deferred pending consideration by the full court of the issues presented in *Messer v. Curci,* 881 F.2d 219 (6th Cir.1989) (en banc), a case similar to this in certain respects. The panel renewed its deliberations in the present case following issuance of the decision in *Curci,* and for the reasons explained below we now affirm the judgment of the district court.

## I

The plaintiff, Edward E. Rice, has been an employee of the Ohio Department of Transportation since 1969. For some time before the present action was filed in December of 1982, Mr. Rice held the position of Personnel Officer III at the Department's District 8 office in Lebanon, Ohio. The position is a "classified" one under the Ohio civil service laws.

In September of 1976 Mr. Rice filed a reverse sex discrimination charge against the Department before the Ohio Civil Rights Commission. The charge was resolved amicably. In August of 1981 a departmental employee who was an Administrative Assistant IV took a leave of absence, creating a temporary vacancy. On August 24, 1981, Mr. Rice was notified that he was receiving a temporary promotion to fill the administrative assistant position, which was "unclassified." Three days later Mr. Rice's supervisor rescinded the temporary promotion on orders from his superiors.

In due course it developed that the previous administrative assistant would not return from his leave of absence. A permanent vacancy was declared, and Mr. Rice made known his interest in filling it. The job went instead to one Andrew Siehl, the son of the Republican county chairman of Preble County, Ohio. Andrew Siehl was 26 years old. Mr. Rice was approximately twice that age.

Mr. Siehl took a temporary leave of absence in August of 1982, and he was replaced by another young man, James Fife. Plaintiff Rice was allegedly told by his supervisor that he (Rice) had been passed over because of his earlier sex discrimination charge and because he had failed to give enough money to the Republican Party.

Mr. Rice thereupon brought suit against the Department, its director, and its deputy director, asserting claims under the Age Discrimination in Employment Act and under 42 U.S.C. §§ 1983 and 1985. The defendants moved for summary judgment. The district court denied the motion with respect to the age discrimination claim (the only claim asserted against the Department), but the court granted summary judgment for the director and deputy director on the other claims. The age discrimination claim was subsequently dismissed by stipulation, making this appeal possible.

## II

We first address Mr. Rice's claims under 42 U.S.C. § 1983. That statute provides, in pertinent part, as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Insofar as the director and deputy director were acting in their official capacities, it is now clear that they, like the state itself, were not "persons" within the meaning of § 1983:

"Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the State itself. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 165–166, 405 [sic]

S.Ct. 3099, 3104–3105, 87 L.Ed.2d 114 (1985); *Monell* [*v. New York City Dept. of Social Services,* 436 U.S. 658,] 690, n. 55, 98 S.Ct. [2018,] 2035, n. 55 [56 L.Ed.2d 611 (1978) ]. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."

*Will v. Michigan Dept. of State Police,* —— U.S. ——, ——, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45 (1989) (footnote omitted).

Although the complaint filed by Mr. Rice alleges at one point that the individual defendants were acting both "in their official and personal capacities," the record does not suggest in any way that the defendants' actions were somehow unofficial. The capacity in which the individual defendants were in fact acting is what matters, not the capacity in which they were sued; congressional intent is not to be circumvented, *Will* says, "by a mere pleading device." But even if we were to assume that the defendants acted in a personal capacity—and the district court made no finding on this point—we are persuaded, for reasons to which we now turn, that there could be no recovery here.

### A

█ Mr. Rice contends that the defendants' consideration of political factors in deciding not to promote him violated his free speech rights under the First Amendment, as incorporated in the Fourteenth Amendment. At the time the district court rendered its decision, the law in this area was in a state of some uncertainty. Unable to find any Sixth Circuit authority directly on point, the district court analyzed a number of district court opinions, including *Messer v. Curci,* 610 F.Supp. 179 (E.D. Ky.1985), and *Avery v. Jennings,* 604 F.Supp. 1356 (S.D.Ohio 1985). On the strength of those opinions, among others, the district court concluded that the First Amendment, as interpreted in *Elrod v.*

*Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), prohibits only the firing of public employees for political reasons, and does not prohibit refusals to hire for political reasons.

Subsequent to the district court's decision, both *Avery* and *Messer* became the subject of opinions by this court. In *Avery v. Jennings,* 786 F.2d 233 (6th Cir.), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986), we said that "the first amendment prohibits official hiring policies based solely on political affiliation," and we interpreted *Elrod* and *Branti* as condemning, on constitutional grounds, "a patronage system that intentionally uses a strict political test as the standard for hiring or firing decisions." 786 F.2d at 234 and 237. Sitting *en banc,* however, we departed from *Avery* in *Messer v. Curci,* 881 F.2d 219 (6th Cir.1989). *Messer* draws a sharp distinction between politically motivated firings and other types of personnel decisions—failure to hire or rehire, *e.g.*—based on political considerations. As far as hiring decisions are concerned, we held, the "allegation of political patronage ... standing alone, does not state a claim for violation of 42 U.S.C. § 1983...." *Id.* at 220.

*Messer* is controlling here. We see no meaningful distinction, in the present context, between a failure to promote and a failure to hire or rehire. Assuming Mr. Rice's allegations of political motivation are correct, the defendants' decision not to promote Mr. Rice was the product of precisely the sort of "preference for political supporters in government employment" that we found constitutionally permissible in *Messer. Id.* at 223. Under *Messer,* the district court's decision to dismiss this claim was clearly correct.

### B

█ Mr. Rice raises a second claim under § 1983, based on the theory that the decision not to promote him was taken partly in retaliation for his filing of the sex discrimination claim in 1976. Such retaliation, Mr. Rice contends, is unconstitutional.

The district court rejected this contention in reliance on *Day v. Wayne County Board of Auditors*, 749 F.2d 1199 (6th Cir.1984). That case held that an action to vindicate rights secured by Title VII of the Civil Rights Act of 1984 must be brought under that statute, and not under § 1983. Unlike the plaintiff in *Day*, Mr. Rice has not brought his § 1983 retaliation claim to vindicate rights secured by Title VII; he seeks to vindicate rights he says are secured by the First Amendment to the Constitution. We pointed out in *Day* that a public employee "may sue … under both Title VII and § 1983 when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution." *Id.* at 1205 (citing *Grano v. Department of Development*, 637 F.2d 1073 (6th Cir. 1980)). *Day* is therefore not controlling in this case.

■ We are called upon here to decide whether the First Amendment itself, as made applicable to the states by the Fourteenth Amendment, prohibits the withholding of promotion in retaliation for the filing of an employment discrimination charge against a governmental employer.[1] It is beyond dispute that public employees may not "constitutionally be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); see also *Keyishian v. Board of Regents*, 385 U.S. 589, 605–06, 87 S.Ct. 675, 684–85, 17 L.Ed.2d 629 (1967). The threshold question in such cases, as the Supreme Court has recently emphasized, is whether the speech involves a matter of "public concern." *Connick v. Meyers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983); *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); see also *Brown v. City of Trenton*, 867 F.2d 318, 321 (6th Cir.1989). If the speech does not involve a matter of

public concern, it is "unnecessary for us to scrutinize" the employment decision. *Connick*, 461 U.S. at 138, 103 S.Ct. at 1685. Not every job-related grievance of a public employee is a matter of public concern. In *Connick*, for example, the issues raised by the plaintiff's circulation of a questionnaire among her co-workers were "mere extensions of [the plaintiff's] dispute over her transfer" to another position, not issues of broader interest to society at large. *Id.* at 148, 103 S.Ct. at 1690.

The Supreme Court has never directly addressed the extent to which an employment grievance like the one filed by Mr. Rice constitutes speech on a matter of public concern. Lower courts have sometimes assumed, often without extensive discussion, that because illegal discrimination against public employees is a matter of public concern, any adverse employment decision resulting from a complaint about such discrimination necessarily violates the First Amendment. See *Greenwood v. Ross*, 778 F.2d 448, 456–57 (8th Cir.1985); *Christensen v. Lawrence F. Quigley Memorial Hospital*, 656 F.Supp. 14, 19 (D.Mass.1985); *Fuchilla v. Prockop*, 682 F.Supp. 247, 261–62 (D.N.J.1987); *Brown v. Town of Allenstown*, 648 F.Supp. 831, 839 (D.N.H.1986); *cf. Owens v. Rush*, 654 F.2d 1370, 1377–80 (10th Cir.1981) (male employee fired for assisting wife with her discrimination charge).

In *Yatvin v. Madison Metropolitan School District*, 840 F.2d 412 (7th Cir. 1989), which, like this, was a failure-to-promote case, the Court of Appeals for the Seventh Circuit took a somewhat different approach. Although it may be "natural for lawyers to suppose that every legal pleading, however humble, comes trailing clouds of First Amendment glory," the Seventh Circuit said, this quaintly Wordsworthian supposition is simply untenable. *Id.* at 420. Some litigation, such as litigation to eliminate school segregation, clearly constitutes speech on a matter of public concern, see

---

1. For the first time on appeal, Mr. Rice suggests that the allegedly retaliatory failure to promote also violated his right to due process and his rights under the Equal Protection Clause. These provisions of the Fourteenth Amendment

were not mentioned in Mr. Rice's complaint as a basis for the retaliation claim, and were not otherwise relied upon in the proceedings before the district court. We shall not consider them here.

*NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), but the legal action commenced by the plaintiff in *Yatvin* had been instituted "to advance her career, not promote a cause." *Yatvin,* 840 F.2d at 419. The *Yatvin* plaintiff could not invoke the protection accorded "public concern" claims, because she had made no attempt to distinguish her case from the "run-of-the-mine single-plaintiff discrimination case." *Id.* at 420.

In the instant case, similarly, plaintiff Rice has made no attempt to distinguish his 1976 reverse discrimination charge from the run-of-the-mine single-plaintiff discrimination case. Unlike the plaintiff in *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), who was simply "speak[ing] out as a citizen on a matter of general concern" in protesting to her employer about what she saw as its racially discriminatory policies, see *Connick,* 461 U.S. at 149 n. 8, 103 S.Ct. at 1691 n. 8. Mr. Rice was not "speak[ing] out as a citizen" when he filed his reverse discrimination charge. Mrs. Givhan's protests to her employer, the Supreme Court thought it important to note, were "not tied to a personal employment dispute...." *Connick,* 461 U.S. at 149 n. 8, 103 S.Ct. at 1691 n. 8. The personal reverse discrimination charge filed by Mr. Rice, in contrast, was part and parcel of Mr. Rice's own "personal employment dispute." If the First Amendment does not convert every public employee grievance into a matter of public concern, we have been given no reason to suppose that a retaliatory failure to promote Mr. Rice would be unconstitutional.

*Messer* is a stronger case, in this respect, than the case presented by Mr. Rice. If a state may constitutionally refuse to hire an employee because of the employee's political philosophy and associations, it is difficult to see why a state may not constitutionally refuse to promote an employee for filing an individual grievance on a matter that does not implicate the employee's political philosophy and associations.

This court has previously held that a public employee's public discussion of charges that her government employer discriminated against women constituted speech on a matter of public concern. *Matulin v. Village of Lodi,* 862 F.2d 609, 612–13 (6th Cir.1988). We stressed in *Matulin* that the plaintiff was merely responding to media inquiries about "an existing controversy." *Id.* at 613. In the present case, by contrast, the record does not reveal the existence of a public controversy concerning allegations of reverse sex discrimination at the Ohio Department of Transportation.

The plaintiff has called our attention to a number of cases decided under statutes other than §§ 1983 and 1985, but those cases are not in point. The question presented by Mr. Rice's § 1983 claim is whether the defendants deprived Mr. Rice of a right secured by the United States Constitution. It does not detract from the seriousness of Mr. Rice's retaliation claim to say, as we are constrained to say, that it simply is not a claim arising under the First Amendment.

### III

Mr. Rice relies, finally, upon 42 U.S.C. § 1985(3), which provides, in pertinent part, as follows:

"If two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State ... from giving or securing to all persons within such State ... the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the parties so injured or deprived may have an action for the recovery of damages occasioned by such

injury or deprivation, against any one or more of the conspirators."

This statute requires a showing of "some racial, or perhaps other class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); see also *United Brotherhood of Carpenters v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Although the Supreme Court has stated that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause," *Scott,* 463 U.S. at 836, 103 S.Ct. at 3360, there is a line of Sixth Circuit cases holding that a group of persons holding similar political views can be a "class of persons" for purposes of § 1985(3). See *Conklin v. Lovely,* 834 F.2d 543, 549 (6th Cir.1987); *Cameron v. Brock,* 473 F.2d 608, 610 (6th Cir.1973) ("clearly defined classes, such as supporters of a political candidate," come within § 1985(3)); *Glasson v. City of Louisville,* 518 F.2d 899, 911–12 (6th Cir.), *cert. denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975).

*Conklin, Cameron,* and *Glasson* suggest that all registered Republicans would constitute a clearly defined "class of persons" for purposes of § 1985(3). Mr. Rice, however, does not claim he was discriminated against for not being a registered Republican; Mr. Rice is a Republican, as it happens, and insofar as § 1985 is concerned his claim is that he was conspired against simply "because of lack of political activity in the Republican Party...."

The degree of political activity engaged in by members of the same political party is too uncertain a standard, in our view, for delineating "clearly defined classes" of the sort § 1985 was designed to protect. Noting that "there is no indication that plaintiff is a member of any class which has historically been entitled to Fourteenth Amendment protection," the district court concluded that Mr. Rice was not a member of a "discrete group" against whom the defendants' alleged conspiratorial animus was directed. We agree.

The judgment of the district court is AFFIRMED.

BOYCE F. MARTIN, JR., Circuit Judge, concurring in part and dissenting in part.

I reluctantly concur in the majority's holding that, under the authority of *Messer v. Curci,* 881 F.2d 219 (6th Cir.1989) (en banc), the district court did not err in its dismissal on summary judgment of Rice's § 1983 claim for failure to promote. Although I disagreed with the decision in *Messer* for the reasons stated in my dissenting opinion in that case, *Messer* is controlling here and mandates the affirmance of the district court's judgment.[1]

However, I dissent from the majority's holding that the district court correctly dismissed Rice's § 1983 claim that the defendants' decision not to promote him, which was allegedly taken in retaliation for his filing a reverse sex discrimination charge, violated the first amendment. The Supreme Court has not yet explicitly decided whether the first amendment prohibits the withholding of promotion in retaliation for the filing of an employment discrimination charge against a governmental employer. In several previous cases, the Court has applied a general balancing test to determine whether a public employee's speech requires constitutional protection. *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). The threshold question in applying this balancing test is whether the public employee's speech may be characterized as constituting speech on a matter of "public concern," as determined by the content, form and context of the speech. *Connick v. Myers,* 461 U.S. 138, 146–48, 103 S.Ct. 1684, 1689–91, 75 L.Ed.2d 708 (1983). Thus, the question raised by this appeal is whether Rice's speech, as evidenced by his employment discrimination charge against the defen-

---

1. I also concur without comment on the majority's affirmance of the district court's dismissal of Rice's claim under Section 1985(3).

 

dants, constitutes speech on a matter of "public concern."

I cannot agree with the majority's decision that Rice's retaliation claim does not constitute speech on a matter of public concern and therefore is not a claim arising under the first amendment. Admittedly, not every employment-related grievance of a public employee raises a matter of public concern under the first amendment; I consequently disagree with the Eighth Circuit's broad rule that the filing of a civil rights lawsuit and discrimination charge with the Equal Employment Opportunity Commission are per se regarded as activities protected by the first amendment. *Greenwood v. Ross,* 778 F.2d 448, 456–57 (8th Cir.1985). However, I also disapprove of the majority's summary dismissal of Rice's claims of discriminatory conduct by a governmental employer. Allegations of race or sex discrimination by a public employer, even if such allegations are made by only a single employee, may frequently implicate matters of public concern and may therefore fall within the protection of the first amendment. *See Connick,* 461 U.S. at 149 n. 8, 103 S.Ct. at 1691 n. 8; *Matulin v. Village of Lodi,* 862 F.2d 609, 612–13 (6th Cir.1988). Because Rice's employee grievance involved an allegation of reverse sex discrimination, I dissent from the majority's affirmance of the district court's summary dismissal of Rice's first amendment retaliation claim.

The Supreme Court has suggested that allegations of discrimination by a public employer are "a matter inherently of public concern," *Connick,* 461 U.S. at 149 n. 8, 103 S.Ct. at 1691 n. 8. While the granting of summary judgment in this case does not substantially reduce access to the federal courts, it does begin to erode this opportunity for plaintiffs such as Rice.[2] Accordingly, I dissent from the majority's decision to uphold the district court's grant of sum-

mary judgment to defendants on Rice's first amendment claim.

---

**2.** Even in *Yatvin v. Madison Metropolitan School District,* 840 F.2d 412 (7th Cir.1988), the case primarily relied upon by the majority, the district court did not summarily dismiss the plaintiff's first amendment retaliation claim. The dismissal of first amendment claims on summary judgment may effectively preclude

plaintiffs, such as Rice, from establishing a viable first amendment claim by preventing them, as the Seventh Circuit required in *Yatvin,* from distinguishing their cases from the "run-of-the-mill single-plaintiff discrimination case." *Yatvin,* 840 F.2d at 420.