RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0205P (6th Cir.)
File Name:  00a0205p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

JAMES A. CURBY, JR.,
          *Plaintiff-Appellant,*

          *v.*

No. 99-3049

MICHAEL ARCHON, et al.,
          *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 98-01166—James S. Gwin, District Judge.

Argued:  April 27, 2000

Decided and Filed:  June 20, 2000

Before:  NORRIS and GILMAN, Circuit Judges; HOOD,*
District Judge.

―――――――――――

## COUNSEL

**ARGUED:**  S. David Worhatch, LAW OFFICES OF S.
DAVID WORHATCH, Stow, Ohio, for Appellant.  Brian D.
Sullivan, REMINGER & REMINGER CO., L.P.A.,

―――――――――――

*The Honorable Joseph M. Hood, United States District Judge for the
Eastern District of Kentucky, sitting by designation.

1

Cleveland, Ohio, for Appellees.  **ON BRIEF:**  S. David Worhatch, LAW OFFICES OF S. DAVID WORHATCH, Stow, Ohio, for Appellant.  Brian D. Sullivan,  John D. Latchney, REMINGER & REMINGER CO., L.P.A., Cleveland, Ohio, for Appellees.

———————————

## OPINION

———————————

RONALD LEE GILMAN, Circuit Judge.  James A. Curby, Jr. claims that his rights to due process under the Fifth and Fourteenth Amendments were violated by the Village of Windham, its mayor, and other public officials (collectively the Village) when the Village Council failed to give him a hearing before removing him as a probationary full-time police officer.  Curby also contends that his rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301-33, were violated when the Village failed to reemploy him after his return from military service at the level of work he enjoyed before becoming a full-time officer.

The district court granted the Village's motion for summary judgment and denied Curby's cross-motion.  It ruled that Curby was not entitled to a hearing because he had failed to demonstrate that he had a property interest in continued employment.  The district court also held that Curby had failed to present any evidence that the Village's adverse employment action was motivated even in part by his military service.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On April 11, 1995, the Village appointed Curby as an "auxiliary" police officer.  As an auxiliary police officer, Curby worked approximately eighty-four hours per month on a part-time basis.  He became a "deputy marshal" on December 11, 1996.  Deputy marshals, who are full-time

police officers, serve a six-month probationary period before being considered for a final or permanent appointment.

While working as a deputy marshal, Curby did not always act appropriately. One instance of misconduct occurred on the evening of January 20, 1997 when Curby, while on duty, allowed a personal friend to ride with him in his police cruiser. He also harassed a private citizen that evening by shining his cruiser's spotlight into the citizen's home at the request of his friend. In addition to the above incident, Curby operated his private car with expired license tags. Curby obviously understood that it was improper to drive the car without valid tags, but he did so anyway.

Because Curby knew that there were deficiencies in his performance, he requested that his probationary period be extended. The Village, however, denied Curby's request. Thereafter, on June 24, 1997, the Village Council removed him as a deputy marshal, finding that he had failed to satisfactorily complete his probationary period.

On June 29, 1997, the Village's police chief told Curby that although he could no longer serve as a deputy marshal, the chief would continue using him as an auxiliary police officer. After this conversation, the Village utilized Curby only to a very limited extent as an auxiliary officer. Two months later, Curby advised the police chief that he would be on military leave from September 13, 1997 through November 27, 1997. He was restored to his status as an auxiliary police officer after completing his military service, but his working time was again very limited (he averaged only five hours per month).

When members of the Village Council found out that Curby was still employed as an auxiliary officer after his return from military service, despite their prior removal of Curby as a deputy marshal, they pressured the police chief to remove him for the same reasons that he was denied a permanent appointment. As a result, the police chief told Curby that his employment as an auxiliary officer would end on December 15, 1997. The mayor, however, extended Curby's

employment until March 1, 1998 because he felt sorry for him. Curby's employment with the Village ceased as of that date.

Shortly thereafter, Curby commenced this action against the Village. The Village moved for summary judgment, arguing that Curby had failed to produce any evidence that its decision to terminate him was motivated by his military service. In his cross-motion for summary judgment, Curby argued that he was entitled to a hearing because he had not been removed from full-time service as a deputy marshal until after his six-month probationary period had ended. He also argued that the Village was required under USERRA to reemploy him at the same level of work (approximately eighty-four hours per month) that he enjoyed before he became a full-time officer.

The district court granted the Village's motion for summary judgment and denied Curby's cross-motion, holding that Curby did not have a property interest in continued employment with the Village and that USERRA does not provide for the relief he sought. This timely appeal followed.

## II. ANALYSIS

### A.  Standard of review

We review de novo a district court's grant of summary judgment. See, *e.g.*, *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). In the present case, no material facts are in dispute.

### B.  Due process claim

Curby alleges a procedural due process claim under 42 U.S.C. § 1983. He argues that the Village unlawfully denied him a hearing before terminating his employment as a deputy marshal.

"a claimant [under USERRA] must first establish a prima facie case of discrimination by showing by a preponderance of the evidence that his protected status was a motivating factor in the adverse employment action.").

Curby thus had the burden of showing that his military service was a motivating factor in the Village's decision not to reemploy him at the same level of work he enjoyed when he gave notice of his departure for military service. By his own admission, however, Curby presented no such evidence, asserting that "[h]e did not need to do so to recover under [USERRA]." For the reasons set forth above, we disagree. Accordingly, we affirm the district court's disposition of Curby's USERRA claim.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

Section 4311 is a congressional response to the Supreme Court's decision in *Monroe v. Standard Oil Co.*, 452 U.S. 549 (1981). In *Monroe*, the Supreme Court held that USERRA's antecedent, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, "was enacted for the significant but limited purpose of protecting the employee-reservist against discriminations like discharge and demotion, motivated *solely by* reserve status." *Id*. at 559 (emphasis added). Congress amended the statute in 1994 to provide that a violation occurs when a person's membership in the uniformed services is *a motivating factor*, even if not the sole factor. *See Newport v. Ford Motor Co.*, 91 F.3d 1164, 1167 (8th Cir. 1996) (noting that USERRA was enacted in response to *Monroe* and changed *Monroe*'s "sole cause" standard to a "motivating factor" standard). Stated otherwise, Congress intended to lessen, but not eliminate, a veteran's obligation to show that the employer's adverse decision was related to his or her service in the armed forces. *See id*.

Curby's argument in effect asks the court to read § 4312 in isolation, without reference to USERRA as a whole. This is not the proper method of statutory interpretation. *See United States v. Meyers*, 952 F.2d 914, 918 (6th Cir. 1992) ("[T]o correctly interpret statutory language, we must look at the specific statutory language as well as the language and design of the statute as a whole.").

The scope of § 4311 is very broad, covering discrimination in initial employment, reemployment, retention in employment, and promotion. Section 4312 is much narrower, addressing only reemployment after a leave of absence for military service. When the goals and the language of USERRA are considered as a whole, it becomes clear that § 4312 is a "subsection" of § 4311. This is particularly apparent because § 4312 refers to the "employment benefits *of this chapter*," (emphasis added), which would of course include § 4311. We therefore conclude that a person seeking relief under § 4312 must also meet the discrimination requirement contained in § 4311. *See Brandsasse v. City of Suffolk*, 72 F. Supp.2d 608, 617 (E.D. Va. 1999) (holding that

To prevail on this claim, Curby must first establish that he enjoyed a property interest in his position as a law enforcement officer. *See Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990) (noting that in analyzing a procedural due process claim, "[w]e initially determine whether a protected property or liberty interest exists . . ."). If Curby did not have a property interest in his position, then he is not entitled to any pre-deprivation process. *See Lake Michigan College Fed'n of Teachers v. Lake Michigan Community College*, 518 F.2d 1091, 1094 (6th Cir. 1975) ("The safeguards of procedural due process apply only when a person is deprived of liberty or property, and plaintiffs cannot prevail here unless their discharge implicated one of these protected interests.").

Government employment amounts to a protected property interest when the employee has "a legitimate expectation of continued employment." *See Johnston-Taylor*, 907 F.2d at 1581 ("Public college professors have a constitutionally protected property interest in their teaching positions when they have a legitimate expectation of continued employment."). A property interest exists and its boundaries are defined by "rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

In determining whether Curby had a property interest sufficient to entitle him to due process, Ohio law must be examined. Section 737.17 of the Ohio Revised Code provides as follows:

All appointments made under sections 737.15 and 737.16 of the Revised Code shall be for a probationary period of six months' continuous service, and none shall be finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the mayor shall transmit to the legislative authority of the village a record of such employee's

service with his recommendations thereon and he may, with the concurrence of the legislative authority, remove or finally appoint the employee.

Based on the above statute, a person must satisfactorily complete a six-month probationary period and be finally appointed in order to receive a permanent appointment as a deputy marshal.

In *Matulin v. Village of Lodi*, 862 F.2d 609 (6th Cir. 1988), this court addressed the question of whether a probationary police officer has a property interest in continued employment. It concluded that the "[c]ourts in Ohio have held that a probationary employee who completes a probationary term but is not finally appointed has no reasonable expectation of continued employment." *Id*. at 616 (citation omitted). The *Matulin* court also pointed out that the termination and removal procedures that apply to permanently appointed employees do not apply to probationary employees. *See id*.

Here, after Curby finished his probationary period, the Village did not finally appoint him as a deputy marshal. Curby thus had no reasonable expectation of continued employment. Without such a property interest, the Village did not owe him a hearing before making its determination. *See Walton v. Montgomery County Welfare Dep't*, 430 N.E.2d 930, 935 (Ohio 1982) ("[P]robationary civil service employment does not constitute a legitimate claim of entitlement to be accorded procedural due process under the Fourteenth Amendment.").

Curby, however, argues that because he was not removed until the 194th day of full-time employment, which was after his six-month probationary period had passed, he automatically acquired a property interest in continued employment. This argument lacks merit because, as noted above, "a probationary employee who completes a probationary term but is not finally appointed has no reasonable expectation of continued employment." *Matulin*, 862 F.2d at 616 (citation omitted); *Dillingham v. Village of*

eighty-four hours per month), a level of work that had ended approximately nine months before his leave of absence. The argument that § 4312 requires an employer to reemploy a veteran returning from military service at a level of work even higher than he enjoyed when he gave notice of his leave is totally without foundation.

Finally, Curby concedes that he has no evidence that the Village discriminated against him because of his military service. Curby argues, however, that he does not have to show discrimination in order to make out a claim under § 4312 because the discrimination requirement contained in § 4311 does not apply to § 4312. In other words, he claims that he has an absolute right to reemployment under § 4312 as long as he meets the specific requirements of that section.

In analyzing whether Curby has the burden of proving discrimination, as set out in § 4311, in order to make out a claim under § 4312, we must examine the reasons behind the enactment of USERRA. Section 4301 describes the goals of USERRA as follows:

(1)  to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
(2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and
(3) to prohibit discrimination against persons because of their service in the uniformed services.

As reflected in § 4301, USERRA prohibits discrimination against military veterans on the basis of their military service and attempts to minimize the disadvantages to their civilian careers as a result of such service.

(emphasis added).

Section 4312 provides in pertinent part as follows:

[A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if— (1) the person . . . has given advance written or verbal notice of such service to such person's employer; (2) the cumulative length of the absence . . . by reason of service in the uniformed services does not exceed five years; and (3) . . . the person reports to, or submits an application for reemployment to, such employer . . . .

Curby points out that he met the notice, length of service, and application requirements of § 4312.  Because of this, he argues that the plain language of § 4312 mandates that the Village utilize him upon his return to the same extent as it did before he became a full-time officer.

Curby's arguments are without merit for several reasons. First of all, § 4312 deals with situations where a person is not reemployed after his or her return from military service.  In this case, Curby was reemployed immediately after his military leave of absence.  Consequently, there is a serious question as to whether § 4312 is applicable at all under these circumstances.

Secondly, to the extent that Curby argues that he must be reemployed at the level of work he enjoyed when he departed for military service, he failed to present any evidence that his hours were any less when he returned from military service than they were from and after the time he announced his intended leave of absence.  Because of this lack of proof, his claim must be dismissed.

Third, Curby appears to be arguing that he must be reemployed after his military service at the level of work he enjoyed before becoming a full-time officer (approximately

*Woodlawn*, 619 N.E.2d 1152, 1155 (Ohio Ct. App. 1993) ("Our holding necessarily means that a police employee's probationary status does not automatically terminate at the end of the six-month period, but, rather, continues until the mayor and council concur on either removing or finally appointing him."); *Walton*, 430 N.E.2d at 932 ("Since the probationary period is for the benefit of the appointing authority to aid in the determination of merit and fitness for civil service employment, the General Assembly historically has provided . . . leeway in the dismissal of probationary employees."); *Monroe v. Smith*, No. CA84-08-050, 1985 WL 8152 *2 (Ohio Ct. App. Jan. 28, 1985) ("By continuing his employment for more than two months [after his probationary period had ended], Patrolman Monroe contends that the inaction . . . induced him into believing he had become a permanent employee.  Mere delay without any special injury therefrom does not give rise to an estoppel.").  Because Curby was not appointed, he never obtained a property interest in continued employment as a deputy marshal.

Curby also argues that if a probationary officer is not entitled to a hearing after completing his probationary period, then the Village could postpone indefinitely its decision regarding his final appointment or removal.  The problem with Curby's contention is that "the probationary period is for the benefit of the appointing authority," *Walton*, 430 N.E.2d at 932, not for the benefit of the probationary employee. Furthermore, the language of O.R.C. § 737.17 makes clear that the mayor's recommendation is not to be made until *after* the probationary period ends, not *within* the six-month period as contended by Curby.  If the mayor's delay in making such a recommendation is unreasonable, then a probationary employee would presumably have the right to seek a writ of mandamus, ordering the mayor to follow the express language of the statute.  As for any delay by the Village Council itself, however, the Ohio courts have not yet determined the outer limits of when the legislative authority must act. *But see Monroe v. Smith*, No. CA84-08-050, 1985 WL 8152 (Ohio Ct. App. Jan. 28, 1985) (holding that the employee's removal seventy-nine days after the six-month probationary period had

passed was not unreasonable). Because Curby was removed by the Village Council only twelve days after his probationary period had ended, he is far short of having a cognizable claim under O.R.C. § 737.17.

Curby further alleges that one council member held a grudge against him because Curby had issued DUI citations to persons leaving the American Legion Post. He also claims that another council member disliked him because Curby confiscated a bag of marijuana from that member's brother. Because of these alleged grudges, Curby argues that there is a genuine issue of material fact as to whether he was denied due process. Once again, however, Curby did not have a property interest in continued employment as a police officer. The fact that two of the five council members who voted against his remaining as a deputy marshal may have disagreed with Curby as to how he enforced the law does not change the fact that he lacked a property interest in continued employment. Moreover, even if the votes of the two council members who allegedly had grudges against Curby were not considered, the other three unbiased council members still voted against him.

Finally, Curby was not entitled to a hearing before he was terminated as an auxiliary officer. Section 737.161 of the Ohio Revised Code gives the mayor of a village the power to "make all appointments and removals of auxiliary police officers, subject to any general rules prescribed by the legislative authority by ordinance." An auxiliary police officer serves no probationary period and has no statutory right to continued employment. *See* O.R.C. § 737.161. Because auxiliary police officers serve at the pleasure of the mayor, they are terminable-at-will. *See Ex rel. Almburg v. Craigo*, No. 89-T-4338, 1990 WL 208843 (Ohio Ct. App. Dec. 14, 1990).

When a public employee has no property right in continued employment, the employee may be discharged without a hearing or notice. *See generally Christophel v. Kukulinsky*, 61 F.3d 479, 482, 485 (6th Cir. 1995) (providing, in an Ohio

civil servant employment case, that "unclassified civil servants have no property right to continued employment" and thus are not entitled to a hearing before being terminated or having their position abolished). Because Curby had no right to continued employment as an auxiliary officer, he had no right to a hearing before being terminated.

Accordingly, we affirm the district court's disposition of Curby's due process claim.

## C.   The USERRA claim

Curby also claims that the Village violated USERRA when it did not utilize him nearly as much after his return from military service as it did between September of 1995 and December of 1996, which was the period before he became a probationary full-time officer. He argues that 38 U.S.C. § 4312 imposes strict liability upon an employer who does not reemploy a veteran, even when such a failure has no relation to the veteran's military service. Curby thus contends that the discrimination requirement in 38 U.S.C. § 4311 does not apply to claims made under § 4312.

Section 4311 of USERRA codifies the discrimination requirement as follows:

> (a) A person who is a member of . . . or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any other benefit . . . by an employer on the basis of that membership . . . .

> (c) An employer shall be considered to have engaged in actions prohibited— (1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is *a motivating factor in the employer's action*, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service . . . .