## Pennington v. Little.

(Decided Dec. 18, 1936.)

WILLIAMS & DENNEY for appellant.

H. C. CLAY for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellee, S. V. Little, brought this action against the appellant, W. G. Pennington, in the Laurel circuit court to recover damages for libel. The trial resulted in a judgment for the plaintiff in the sum of $500. Defendant, complaining of this judgment, prosecutes this appeal.

Plaintiff's petition is as follows:

"The plaintiff, Sylvester V. Little, states that he and the defendant, W. G. Pennington, are each residents of Laurel county, Kentucky, that the plaintiff was at the regular November election in 1933 duly elected commonwealth's attorney of the 27th Judicial District of Kentucky, which includes the counties of Clay, Jackson and Laurel, that he thereupon qualified as such commonwealth's attorney and entered upon the discharge of his duties the first Monday in January, 1934, and is still acting as such; that on the 20th day of January, 1935, the defendant, W. G. Pennington falsely and maliciously wrote of and concerning this plaintiff a letter, written and signed by the defendant and addressed to H. H. Denhardt, which letter was in these words:

"Green Mount, Ky., 2-2-35.

" 'Hon. H. H. Denhardt, Frankfort, Kentucky.

" 'Dear Sir: After reading what you had to say about our district and county officials of Laurel, Jackson and Clay counties, it has prompted me to lend a helping hand to you in any way I can.

" 'I want to respectively ask you to make in Laurel county, at London, Kentucky, an investigation and please allow me to give you the following of some of my own experiences in this court.

" 'In November, 1933, a band of fifteen men came at 11 o'clock in the night on a piece of land I had bought and without any official right whatever, tore down a building worth around One Thousand Dollars. I went before a Laurel county grand jury of 12 good citizens, three of them being ministers of the gospel, and they voted an indictment against them for conspiracy and one George Crawford, county attorney, now serving as such, refused to sign this, but did write and sign one for the grand larceny; so as soon as this was returned our dominant commonwealth's attorney, Sylvester V. Little, filed a motion in writing to dismiss this, which motion was sustained by our circuit judge, W. E. Begley, so my loss was around one thousand dollars, to say nothing of the intimidating answers I got from them when I went out and ordered them to stop and the mental anguish my wife and myself had to bear, and then could not even indict them for it. Then I bought another small farm at a commissioner's sale and after I bought it the man from whom I bought it and his son tore down a barn worth around 75 to one hundred dollars, moved it away; so then I went before another grand jury and they indicted them for grand larceny and the same dominant Sylvester V. Little wrote on the indictment saying he had made a thorough investigation and found that a conviction could not be made, when he had never mentioned it to me and not to the witnesses so his motion was sustained by the court, and it was dismissed, so I am making an appeal to the state for relief, and will be glad to meet you in London, Kentucky, if you so desire me to, or need me any way to give information. I believe that 80% of our citizens would request the same investigation of our mountain county. About one-half of this band that tore down my house at night was a set of Black Brothers, first cousins to Sylvester Little and also George Craw-

ford, county attorney, is a cousin to one Thomas Black, was one of the leading gang and was at that time elected for justice of the peace and is serving as such now. He invited me over to help them. * * *

" 'Please pardon this lengthy letter but I wanted to explain some of the facts about our officials. Can refer you to many more who have been treated wrong.

" 'May I have a hearing on this matter? * * *

"That said letter was received by said Denhardt and read by him and other persons. Plaintiff states that he was damaged by the publication of said letter in the sum of Ten Thousand Dollars ($10,000.00).

"Wherefore, he prays judgment against defendant, for $10,000.00, for his costs and for all proper relief."

To this petition a general demurrer was filed, which was overruled by the court, when defendant answered, denying that he "falsely and maliciously wrote of and concerning this plaintiff a letter" as complained of in the petition.

The petition makes no allegation by way of colloquium or innuendo tending to extend the meaning of the written statement or to show that the language of the letter was libelous per se in its statements, by reason of their tending to discredit or injure the plaintiff as a public officer (though alleging that he was such), though such argument is made and urged by appellee's counsel in brief.

As also stated, supra, the appellant (defendant below) answered, denying only that he had falsely or maliciously made the statements complained of in the letter as libelous.

This plea, denying that he falsely wrote of the appellee, we interpret as inaptly attempting to plead the truth of the statements made in the letter as justification for his having made them and as a defense to the claim that they were libelous.

Section 124 of the Civil Code of Practice provides in part that:

"In the actions mentioned in section 123 [for libel or slander], the defendant may state the truth of the alleged libel or slander, and any mitigating circumstances."

The applicable rule in such case, as declared in Herald Publishing Company v. Feltner, 158 Ky. 35, 164 S. W. 370, is that in an action for libel, pleading and proof of the truth of the written statements is always a complete defense, although the publication may be inspired by malice or ill will and be libelous per se.

Here the statements of the letter complained of were that the appellee (plaintiff below) had the indictment procured by appellant dismissed against the named offenders, without first conferring with him as to his wishes respecting its dismissal, and that some of those accused by it were cousins of both the appellee commonwealth's attorney and also of one George Crawford (referred to in the letter) who was then the acting county attorney. Further, the appellee, when testifying, admits or states that he did, for good and sufficient reasons, which he indorsed in writing upon the indictment, move for its dismissal, which motion was sustained and he further admits that some of the parties named and accused therein were his kinspeople. Nowhere does the letter libelously or at all state that the appellee, Little, corruptly, or when motivated by the object of wrongfully protecting his kins people, or improperly made the motion to dismiss the indictment against them, or that his action in so doing showed an unfitness on the part of the appellee to serve as a public officer. In short, the things set forth as done by appellee and complained of as being per se libelous were by his testimony shown and admitted to have been in fact done by him.

Appellant's letter states that "about one-half of this band that tore down my house at night was a set of Black Brothers, first cousins to Sylvester Little and also George Crawford, County Attorney, is a cousin to one Thomas Black, was one of the leading gang and was at that time elected for Justice of the Peace and is serving as such now."

This language of the letter, disclosing the relationship between the Blacks and the appellee, Little, and

also that between Crawford and Thomas Black, and the further unnoteworthy fact of the latter's being a justice of the peace, while perhaps tending to raise the question as to the propriety of their charged action or part in the matters named, certainly is not to be held of libelous character in its statement as to the charged conduct of appellee, Little, in dismissing the indictment against those of kin to him, where Little himself admits that he did so.

The plea here made as to the truth of the written statements made, and complained of by appellee as libelous, is one by way of confession and avoidance, wherein the defendant admits his making of the statements complained of but pleads their truth, by way of justification and as a defense.

Here the appellant by his answer neither does nor could deny his making of the statements complained of in his written letter, which he admits writing to General Denhardt, and its receipt by him, but he only indirectly pleads their truth by denying that they were written falsely or maliciously by him, or, that is to say, asserts that the statements made were true, and which the plaintiff himselt admits.

The appellee, however, lays special stress and insistence upon the phrase of the letter appearing in its last paragraph, which is that, ''[I] can refer you to many more who have been treated wrong.''

It is clear that this statement of the letter does not name or designate Little as being the one or officer by whom these many other people have been treated wrongly.

In 17 R. C. L. sec. 69, page 325, it is stated that proof of the truth of the defamatory words employed is, as a rule, a complete defense in an action for libel or slander, in the absence of a statutory provision to the contrary. The fact that malice or ill will inspired the defendant to publish the truth will not impair his defense.

Even conceding arguendo that the language of the letter, here complained of as referring to the official conduct of the commonwealth's attorney in dismissing an indictment against his kinsmen, was libelous and

tended to discredit him or to show him an unfit person for discharging the high public duties of his official position, the official was yet hardly in a position to complain of the statements made as to his dismissing the indictment against his kinsmen upon his written motion, as libelous and damaging where the official himself admits the truth of such statement and also, as to the further one that some of those accused in the indictment were his cousins. The letter only states that such in fact was the conduct of Little (plaintiff below), but does not state that he acted corruptly or improperly in so doing.

The fact that the appellee by his evidence shows that although the indictment was (as stated in the letter) dismissed at his instance, without consulting appellant, it was nevertheless not wrongfully dismissed upon his motion against the men accused in the indictment, does not serve to make the language of the letter libelous, where the appellant did not charge that its dismissal was corruptly or wrongfully motivated and procured by Little.

Further, the defendant may not justly or rightly here be held to respond in damages to the appellee for humiliation and mental distress, allegedly suffered by plaintiff by reason of or for any discrediting of his fitness for holding office and growing out of or resulting from statements made as to certain acts done by him as a public officer, which he, by his testimony, admits having done.

Whatever was his motive or purpose in doing the official acts complained of, in moving to dismiss the indictments returned against the parties kin to him, where the alleged libelous statement only charges that he did in fact do the things stated, which he in turn admits he did, the appellant is certainly not to be held responsible for any criticism arising from his admitted acts, which he claims humiliates and discredits him. If such injury has been suffered by appellee, it is rather to be attributed to his doing such an act, rather than to appellant's written statement made to General Denhardt that he had done it.

The court upon this evidence instructed the jury that they should find for the plaintiff only if they be-

lieved from the evidence that that part of the letter referring to Sylvester Little was false, and that unless they should so believe, they should find for the defendant.

Clearly, the court, by reason of the insufficiency of the petition, as to which upon such ground he should have sustained the defendant's demurrer, as well as because of the showing later made by the plaintiff's admission of having done the acts stated in the letter, should have given the jury a peremptory instruction to find for the defendant.

Because of its error in each instance committed, its judgment must be and it is reversed.