47 F.3d 1168
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard DOTSON, Plaintiff-Appellant,
v.
Jerry ABRAMSON and City of Louisville, Defendants-Appellees.
 No. 93-6542.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1995.
 
 1
 Before: NORRIS and SUHRHEINRICH, Circuit Judges; and MILES, Senior District Judge.*
 
 
 2
 MILES, Senior District Judge.
 
 
 3
 Plaintiff Richard Dotson filed this action under 42 U.S.C. Sec. 1983, alleging that his rights to freedom of speech, association, and due process of law were violated when he was demoted from his position as the city of Louisville's police chief. Dotson also alleged that certain statements made to the media by the city's mayor, defendant Jerry Abramson, were defamatory under Kentucky law. On appeal, the issue is whether the district court's grant of summary judgment to the defendants was proper. For the reasons to follow, we conclude that it was, and affirm.
 
 
 4
 * In 1982, Harvey Sloane, M.D., then mayor of the city of Louisville, appointed Dotson to be the city's police chief. That same year, Sloane secured the passage of L.C.O. Sec. 34.111. Dotson contends that this ordinance for the first time in the city's history made the police chief position a merit job. Dotson also contends that Sloane was able to pass Sec. 34.111 because Louisville's citizenry was fed up with the corruption which had permeated the police department before Dotson's appointment.
 
 
 5
 After his term expired in 1986, Sloane could not by law seek re-election as mayor. Abramson, who was a member of the same political party, campaigned for the office and was elected. Dotson alleges that Abramson, who was the first mayor of Louisville who could not appoint his own police chief, was unhappy with his plight and stated that he felt "saddled" with Dotson as chief. Dotson further alleges that Abramson "made no bones" about his dislike for Sloane. Dotson contends that Abramson therefore set out to rid himself of Dotson and others associated with Sloane.
 
 
 6
 Dotson concedes that Abramson made no overt moves to replace him during his first term as mayor. However, in the fall of 1989, Abramson was re-elected and, according to Dotson, began to waste no time in seeking Dotson's removal as chief. According to the amended complaint, Abramson's efforts included seeking the repeal of Sec. 34.111, a measure against which Dotson alleges he openly lobbied. Dotson further alleges that when Abramson was unsuccessful in procuring the repeal of Sec. 34.111, Abramson and his safety director, Thomas Kuster, began to attempt to undermine Dotson. One means which they allegedly used was to appoint all police officers above the rank of captain.
 
 
 7
 Dotson alleges that Abramson's campaign to rid himself of Dotson came to a head when Abramson and Kuster discovered that Dotson was privy to confidential information concerning federal grand jury investigations into vice and drug activities in Louisville. Dotson alleges that he purposefully kept the two in the dark concerning these investigations, the obvious inference being that Abramson and Kuster were corrupt. In any event, Dotson alleges that his refusal to cooperate with Abramson and Kuster in such efforts, more than any other factor, led to his downfall. In November, 1989, Dotson met with Abramson, Kuster, and others regarding an order, issued by Kuster, requiring Dotson to place one of Abramson's hand-picked people on a list of persons who were to be given access to information about the grand jury investigations. (This list was to be forwarded to the United States Attorney by Dotson.) Dotson alleges that he refused the order.
 
 
 8
 Events took a rather interesting turn in February, 1990, when Dotson's estranged second wife, Patricia, filed a civil action against him in Jefferson Circuit Court, alleging that Dotson had physically abused her during his term as police chief. Patricia named Abramson, Kuster, and the city as additional defendants, alleging that they had knowledge of and had condoned the abuse. Patricia's allegations were apparently well-publicized by the local press. Not surprisingly, given that he and the city had been implicated in condoning the alleged abuse, Abramson did not rely on internal investigators to look into Patricia's allegations; instead, he hired a private investigative agency, The Academy Group, Inc. ("Academy"), located in Manassas, Virginia, to perform this task. In July, 1990, Academy issued its report to Abramson, in which it concluded that Dotson had abused not only Patricia but also his first wife, Martha Jeffries. Academy's investigation also revealed other allegations of misconduct against Dotson, including allegations that he had sexually harassed female employees of the police department.
 
 
 9
 On July 13, 1990, Abramson notified Dotson that he was suspended with pay pending the completion of the Sec. 34.111 removal process. Dotson requested that he be provided with a public hearing before the Police Administration Advisory Committee ("PAAC"), a body appointed by city law to perform certain functions set forth in Sec. 34.111. The PAAC held a three-day hearing on the proposed removal beginning on August 7, 1990, at which Dotson was represented by counsel and was permitted to cross-examine and present witnesses. On August 31, 1990, the PAAC issued a report detailing its findings, which included a findings (1) that Dotson had abused both Patricia Dotson and Martha Jeffries, and (2) that Dotson had verbally abused and harassed female police department employees. The PAAC found that Dotson's abuse of Martha Jeffries, which was perpetrated before his tenure as chief, was not cause for removal, but that the other actions were cause for removal. The PAAC recommended removal. Abramson accepted this recommendation and notified Dotson of his removal as chief on August 31, 1990. Dotson was not, however, discharged from the police department. Instead, after successfully completing a psychological evaluation to determine his fitness for duty, he was demoted to the rank of captain and allowed to remain on the force.
 
 
 10
 Dotson originally filed this action in Kentucky state court, alleging that Abramson had removed him as chief in retaliation for Dotson's association with Sloane, that the manner of Dotson's removal violated due process, and that Abramson had defamed him by telling the media that he, Abramson, had ordered Dotson to undergo a psychological evaluation to determine his fitness for duty as a police officer. The defendants filed a notice of removal. They also filed a motion to dismiss Dotson's complaint, or, in the alternative for summary judgment. Dotson responded to the motion in part by filing an amended complaint in which he expanded his allegations of constitutional deprivation against the defendants to include additional claims that the defendants demoted him in retaliation for advocating the repeal of Sec. 34.111, for openly opposing age discrimination in the promotion of officers to police command positions, for refusing to cooperate in the alleged efforts to compromise the secrecy of federal grand jury proceedings, and for refusing a command by Abramson to resign as chief. Dotson sought equitable relief as well as money damages. The defendants renewed their previous motion. The district court denied the motion, concluding that Dotson had stated a claim for relief and that the motion for summary judgment was premature because no discovery had been undertaken.
 
 
 11
 On December 9, 1991, after the parties had appeared for a pretrial conference, the district court issued an order in which it concluded that it would re-examine the defendants' motion to dismiss. In this order, the court also stayed all discovery, with the exception of requiring Dotson to respond to interrogatories propounded by the defendants for the purpose of defining the issue of qualified immunity.[1] On April 8, 1992, the district court issued a Memorandum Opinion and order concluding that Abramson was entitled to qualified immunity on Dotson's procedural due process claims and on Dotson's First Amendment claims with the exception of the claims alleging removal on the basis of political affiliation and grand jury compromise. The court also lifted the stay on discovery with respect to the remaining claims. Finally, the court ordered the parties to submit "documentary support" for their respective positions by May 20, 1992, at which time the court planned to reconsider the defendants' summary judgment motion. On June 29, 1992, the district court issued an order granting summary judgment in favor of Abramson, concluding that he was entitled to qualified immunity on the remaining First Amendment claims.
 
 
 12
 On September 23, 1992, Dotson filed a motion requesting a trial date on all claims remaining in the case. The district court denied the motion and held a status conference on December 15, 1992, at which time the court ordered the parties to submit briefs outlining the issues remaining unresolved in the case. The defendants re-asserted their summary judgment motion, and on November 9, 1993, the district court issued a Memorandum Opinion and Order granting the defendants' motion for summary judgment and dismissing all claims with prejudice. Dotson filed this timely appeal.
 
 II
 
 13
 We review a grant of summary judgment de novo. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir. 1991). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing that there is an absence of a genuine dispute over any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party satisfies this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Id. at 325. In evaluating a motion for summary judgment, we must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In our review, we view all facts and inferences in the light most favorable to the nonmoving party. Boyd v. Ford Motor Co., 948 F.2d 283, 285 (6th Cir. 1991), cert. denied, 112 S.Ct. 1481 (1992).
 
 
 14
 Even if a district court grants summary judgment for the wrong reason, we are required to affirm the decision if it was correct for any reason, even one not considered by the district court. Jarrett v. Kassel, 972 F.2d 1415, 1429 (6th Cir. 1992), cert. denied, 113 S.Ct. 1272 (1993); Boger v. Wayne County, 950 F.2d 316, 322 (6th Cir. 1991). In relying on an alternative basis for affirmance, we must simply take care not to deny the opposing party an opportunity to respond to the theory. Hines v. Joy Mfg. Co., 850 F.2d 1146, 1150 (6th Cir. 1988); Herm v. Stafford, 663 F.2d 669, 684 (6th Cir. 1981).
 
 A.
 
 15
 The district court's rulings on Dotson's First Amendment claims are not entirely consistent. At one point, the court determined that the defendants were entitled to qualified immunity on all of Dotson's First Amendment claims with the exception of his claim involving grand jury compromise and his freedom of association claim. At the same time, the district court expressed concerns about whether Dotson had shown that the defendants had in fact committed the acts in question. The Court lifted the stay of discovery which had been imposed, thus enabling Dotson to factually develop these issues. Subsequently, however, the district court seemed to reverse itself, for in a later opinion it concluded that none of Dotson's alleged communications or associations arose to the level of a constitutionally protected interest in accordance with Rankin v. McPherson, 483 U.S. 378 (1987) and Connick v. Myers, 461 U.S. 138 (1983). The district court therefore did not address causation, or, in other words, whether Dotson's activities were a substantial and motivating factor in the adverse employment decision, in accordance with Mt. Healthy City School Dist. Bd. of Education v. Doyle, 429 U.S. 274, 295 (1977).
 
 
 16
 Dotson first argues that the district court erred in determining that his alleged speech did not involve a matter of public concern. This is the "'threshold question"' to be resolved in any public employee free speech matter. Rankin, 483 U.S. at 384-85. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48.
 
 
 17
 We agree with Dotson that at least some of his alleged speech-related activities touched upon matters of public concern. His alleged opposition to age discrimination in the police department was a matter of public concern. See Matulin v. Village of Lodi, 862 F.2d 609, 612-13 (6th Cir. 1988) (allegations of invidious discrimination by public employer are "'a matter inherently of public concern,"' quoting Connick, 461 U.S. at 149 n.8). We also agree that Dotson's refusal to cooperate with what he alleged to be Abramson's attempts to compromise grand jury investigations involved a matter of public concern. See Marohnic v. Walker, 800 F.2d 613, 616 (6th Cir. 1986) (cooperation with investigation of fraud in public agency touched upon a matter of public concern).[2] Finally, we assume that Dotson's alleged speech regarding maintaining the non-political character of the police chief position involved a matter of public concern. See Grossman v. Schwartz, 678 F. Supp. 440, 447 (S.D.N.Y. 1988) (city law department attorney's speech against hiring of non-civil service attorneys involved matter or public concern).[3]
 
 
 18
 Although we conclude that the district court erred in determining that none of Dotson's speech involved a matter of public concern, we nonetheless conclude that the district court did not err in granting summary judgment on Dotson's speech claims. Although the district court failed to address the causation question, we conclude that the lack of evidence that Dotson was demoted for his alleged speech activities justified summary judgment in favor of the defendants. Even if the district court had concluded that Dotson's speech involved a matter of public concern, and even if the speech could survive a balance against the city's interest, see Connick, 461 U.S. at 142, Dotson was required to show that the speech was a substantial or motivating factor in the decision to demote him. Mt. Healthy, 429 U.S. at 287; Langford v. Lane, 921 F.2d 677, 683 (6th Cir. 1991); Matulin, 862 F.2d at 613; Barnes v. McDowell, 848 F.2d 725, 733 n.9 (6th Cir. 1988), cert. denied, 488 U.S. 1007 (1989). Once an employee makes such a showing, the burden then shifts to the employer, who must be given an opportunity to show that it would have made the same decision even if the plaintiff had not engaged in the protected conduct. Matulin, 862 F.2d at 613. Although we have stated that "causation is an issue of fact which must be decided by the jury[,]" id., the defendants presented uncontested evidence to the district court showing that the investigation into Dotson's fitness to continue as police chief was begun virtually immediately after Patricia Dotson filed a lawsuit alleging that her estranged husband had abused her during his term as police chief. As the record compiled in the district court reveals, the evidence that Dotson abused Patricia was compelling, and the PAAC's finding that the allegations against Dotson were true justified his removal under Sec.34.111(E).[4] Although Dotson argues that a certain newspaper article cast "serious doubts" on the merits of Patricia Dotson's allegations of abuse, Appellant's Brief at p. 12, he has pointed to no admissible evidence which suggests that Patricia's allegations against Dotson, Abramson, and the city did not provide the impetus for the demotion.[5] More importantly, however, we can scarcely ignore the fact that the abuse allegations were publicized, and that Abramson and the city were implicated in condoning the abuse during Dotson's tenure. The timing of the removal--coming as it did on the heels of Patricia Dotson's filing of her lawsuit--speaks volumes for the effect of the abuse allegations on the defendants' conduct. It is hardly surprising that Abramson and the city would wish to respond swiftly and decisively to allegations that they knew about the abuse and did nothing--even if the allegations of abuse were challenged by Dotson. Because we conclude that no reasonable jury could find that Dotson's removal was caused by anything other than Patricia Dotson's allegations, we also conclude that summary judgment was properly granted in favor of the defendants on Dotson's First Amendment claims.
 
 
 19
 In its final Memorandum Opinion and Order, the district court did not separately address Dotson's association claim, i.e., that he was demoted for his ties to former mayor Sloane. The district court merely dismissed all remaining First Amendment claims. However, we conclude that summary judgment was also properly granted to the defendants on this claim. During his deposition, Dotson vehemently denied having any political contact or association with Sloane. Dotson also denied having involvement in any of Sloane's political campaigns. Therefore, no political affiliation is implicated, and we affirm the dismissal of this claim. See Boger, 950 F.2d at 323 (summary judgment properly granted on association claim made by former employee of medical examiner's office; plaintiff failed to show more than personal alliance with medical examiner); see also Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 57 (1st Cir. 1990) ("[e]ntry into the constitutional orbit requires more than a mere relationship"); Copp v. Unified School Dist. No. 501, 882 F.2d 1547, 1551 (10th Cir. 1989) (first amendment association claim deficient where plaintiff admitted he had not assisted school principal accused of harassment; court refused to recognize general right to associate, absent familial setting).
 
 B.
 
 20
 Dotson alleges that in demoting him from the chief of police position, the defendants violated his Fourteenth Amendment procedural due process rights because they failed to provide him with "meaningful post-deprivation remedies." Amended Complaint, p 9. The district court assumed that Dotson had a property interest in the chief position, but concluded that the procedures afforded Dotson in his demotion satisfied constitutional standards.[6]
 
 
 21
 Dotson admits that "the [pre-deprivation] hearing that was held concerning his removal as chief complied with all Constitutinal [sic] requirements for pre-termination proceedings[.]" Appellant's Brief at p. 34. However, he nonetheless argues that he was constitutionally entitled to a "post-termination" hearing in addition to the pre-demotion hearing which he received.
 
 
 22
 As stated by the Court in Cleveland Bd. of Educ. v. Loudermill,
 
 
 23
 An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.' Boddie v. Connecticut, 401 U.S. 371, 379 (1971) (emphasis in original); see Bell v. Burson, 402 U.S. 535, 542 (1971). This principle requires 'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment. Board of Regents v. Roth, 408 U.S., at 569-570; Perry v. Sindermann, 408 U.S. 593, 599 (1972). ...
 
 
 24
 470 U.S. 532, 542 (1985) (footnote omitted). As decisions of this circuit have clarified, the hearing required by the due process clause may be a pre-deprivation hearing, a pre-deprivation abbreviated "opportunity to respond" with a prompt post-deprivation hearing, or solely a prompt post-deprivation hearing. Chernin v. Welchans, 844 F.2d 322, 326 (6th Cir. 1988). "'[T]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."' Loudermill, 470 U.S. at 545 (quoting Boddie, 401 U.S. at 378).
 
 
 25
 In this case, Dotson was afforded a full, adversarial hearing before his demotion, even though the constitution did not require it. Dotson was provided with sufficient notice of the proceedings against him, he was represented by counsel, and he was able to present and cross-examine witnesses. The hearing, which we note Dotson himself requested, took place over a three-day period before the PAAC. However, relying on language in Duchesne v. Williams, 849 F.2d 1004 (6th Cir. 1988), cert. denied, 489 U.S. 1081 (1989), he argues that he is also entitled to a post-demotion hearing in order to challenge what he contends are irregularities in the proceedings.[7] Specifically, in Duchesne, the court stated that
 
 
 26
 The full, post-termination, adversary, trial-type hearing will serve to ferret out bias, pretext, deception and corruption by the employer in discharging the employee. The adversary processes employed in an adjudicatory, post-termination hearing controlled by an impartial judge lend themselves to proving wrongful conduct by the employer. ...
 
 
 27
 849 F.2d at 1008.
 
 
 28
 In Duchesne, the court was merely noting that the alleged defect in the plaintiff's pre-termination hearing (there, an allegedly biased decisionmaker) could be remedied through a post-termination full-fledged hearing. 849 F.2d at 1006 n.1. In this case, however, Dotson was afforded an extensive, three-day trial-type hearing before his demotion provided before the PAAC at his own request. He was not terminated from his police employment, and he has presented no evidence suggesting that the PAAC's conclusions are not supported by the record generated during the hearing. Under the circumstances, we conclude that he received all process due and that the district court properly granted summary judgment in favor of the defendants on this claim.
 
 C.
 
 29
 Dotson's defamation claim is based on the following statement which Abramson admittedly made to the press concerning Dotson's removal:
 
 
 30
 I have ordered Dotson to undergo a psychological evaluation to determine if he is fit to be a police officer. He will not have any police powers until the evaluation is complete. He will not be allowed to carry a badge or a gun. Even if he passes the evaluation he may require psychological treatment to stay with the department [as a police officer].
 
 
 31
 Amended Complaint, ps 10, 12. The district court granted the defendants summary judgment on this state law claim, concluding that the statement was not defamatory per se or per quod. The district court further concluded that the statement was true, and that truth is a complete defense to an action for libel under Kentucky law. Bell v. Courier-Journal and Louisville Times Co., 402 S.W.2d 84, 87 (Ky. 1966). On appeal, Dotson argues that the statements were false and were defamatory per se because they imputed to him a mental disease or defect which rendered him unfit to perform his duties.
 
 Kentucky law holds that
 
 32
 In this state, truth is a complete defense to an action for libel. See Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964. And this is so although the publication may have been inspired by malice or ill will and be libelous per se. Baskett v. Crossfield, 190 Ky. 751, 228 S.W. 673; Pennington v. Little, 266 Ky. 750, 99 S.W.2d 776.
 
 
 33
 Bell, 402 S.W.2d at 87. The uncontested facts show that Abramson did refer Dotson for a psychological evaluation to determine his fitness for duty. The district court therefore properly granted summary judgment to the defendants on this claim.
 
 III
 
 34
 For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the defendants.
 
 
 
 *
 Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Before the court stayed discovery, Dotson's only apparent attempt at discovery consisted of a set of 16 interrogatories which he served on Abramson. Abramson filed answers to these interrogatories on December 3, 1991. On appeal, Dotson contends that he was unable to undertake further discovery before the court issued the stay because he was "somewhat distracted by the Defendants' voluminous attacks" on his claims. Appellant's Brief at p. 19
 
 
 [2]
 The defendants argue that Dotson's alleged refusal to compromise the federal grand jury proceedings is not entitled to First Amendment protection in part because he never sought to expose Abramson or his cohorts for this activity. Cf. O'Donnell v. Yanchulis, 875 F.2d 1059, 1061 (3d Cir. 1989) (summary judgment for defendants reversed where plaintiff police chief alleged defendant township supervisors retaliated against him for refusing to "fix" citations for them and for informing television station of request). However, this fact alone is not controlling. Dotson has alleged that he refused Abramson's order to disclose certain matters because he thought this would compromise criminal investigations. The right to refrain from speaking is protected by the First Amendment. See Wooley v. Maynard, 430 U.S. 705, 714 (1977) ("The right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind,"' quoting Board of Education v. Barnette, 319 U.S. 624, 637 (1943))
 
 
 [3]
 As for Dotson's allegation that he was demoted for refusing to resign, Dotson's alleged refusal to step down as chief was preceded by the purported demand that he do so. It therefore follows that no causal relation can be established even if we assume that the refusal involved a matter of public concern
 
 
 [4]
 In making his decision, Abramson also relied on evidence that Dotson had abused his first wife, Martha, before becoming police chief. Although this would apparently not justify his removal from office under Sec. 34.111(E), reliance on this evidence does not violate the constitution
 
 
 [5]
 Dotson has appended to his appellate brief copies of a release and agreed order of dismissal signed by Patricia Dotson in November, 1993 in which she agreed to dismiss all claims against her former husband. We view the submission of these documents on appeal as an act of desperation. Even Dotson concedes that they are not a part of the record, see Appellant's Brief at p. 12, and therefore the documents are simply not properly before us. We also seriously question the admissibility of such evidence under Fed.R.Evid. 408, and therefore also question whether it would have had any value in opposing the defendants' motion even if it had been made a part of the record. See Fed.R.Civ.P. 56(c) (requiring supporting and opposing affidavits to "set forth such facts as would be admissible in evidence")
 At oral argument, Dotson contended that he was unable to present evidence in support of his claims because the district court had entered a stay of discovery. However, Dotson has conceded that apart from the grand jury compromise issue, he did not seek to factually develop his claims either before or after the district court entered the stay. We also note that at one point Dotson even requested that the district court set a trial date. Such a request is inconsistent with a need for additional discovery. Under the circumstances, we see no basis for remanding the case for the purpose of allowing the parties to conduct further discovery.
 
 
 [6]
 The district court also concluded that Abramson was entitled to qualified immunity on this claim because he could have reasonably believed that the procedures afforded Dotson complied with due process requirements
 
 
 [7]
 Dotson contends that the PAAC proceedings suffered from the following irregularities, among others: the quality of the evidence presented against him; the partiality of the PAAC board members who heard the case; and insufficient time to prepare a defense